J. Malcolm DeVoy IV (Nevada Bar No. 11950)
Marc J. Randazza (*Application for pro hac vice admission pending*)
RANDAZZA LEGAL GROUP
jmd@Randazza.com
mjr@Randazza.com
7001 W. Charleston Boulevard, # 1043
Las Vegas, NV 89117
Telephone: 888-667-1113
Facsimile: 305-437-7662

Ronald D. Coleman (*Application for pro hac vice admission pending*)
GOETZ FITZPATRICK LLP
rcoleman@goetzfitz.com
1 Penn Plaza – Suite 4401
New York, NY  10119
Telephone: 212-695-8100
Facsimile: 212-629-4013

Attorneys for *Amicus Curiae*,
Media Bloggers Association

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited liability company, | Case No. 2:10-cv-01736-KJD-RJJ |
| Plaintiff, | **BRIEF OF *AMICUS CURIAE* MEDIA BLOGGERS ASSOCIATION** |
| vs. | |
| BILL HYATT, an individual | |
| Defendant. | |

## ***AMICUS CURIAE* BRIEF**

### I. Introduction

Righthaven is a Nevada LLC (hereinafter, "Righthaven") with the most questionable of business models.  It was formed by an attorney who, instead of simply representing copyright plaintiffs in justifiable cases, chose to create an entirely champertous enterprise out of unsound copyright claims.  Its "business model" is to seek out unwitting and, perhaps, careless bloggers

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

- 1 -

who have used portions of the *Las Vegas Review Journal* in online discussions. Once Righthaven finds these uses by conducting internet "sweeps," it fallaciously "acquires" the rights to the articles in question, essentially as causes of action, solely for the purpose of filing a lawsuit.

The vast majority of the victims of this scheme are under the impression that by giving proper attribution to a source, they are within their rights to use such excerpts. Almost none of them could ever afford legal representation; flummoxed by the threat of a $150,000 potential statutory damage award – an amount that it can safely be said none of them could dream of satisfying – and lacking even a clue as to whom to turn to for advice, many will simply default.

Righthaven now seeks to turn a default into a windfall by asking this Court to grant it a constitutionally impermissible and outrageous award of at least $30,000 in statutory damages, ranging up to $150,000.00 in this matter, in addition to $1,850.00 in costs and attorney's fees[1] – all based on specious infringement claims for forgotten newspaper articles whose economic value is surely orders of magnitude below these astronomical sums.

Righthaven's assertion of itself as the plaintiff in these suits is dubious, abusive, and contrary to the Copyright Act's intent. In order to sue for copyright infringement, one must own the copyright or be the owner, assignee or licensee of an "exclusive" copyright right found in 17 U.S.C. § 106. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1145-46 (9th Cir. 2008); *Silvers v. Sony Pictures Entmt., Inc.*, 402 F.3d 881, 887 (9th Cir. 2005) ("only owners of an exclusive right in a copyright may sue"). The right to sue is not considered an exclusive and intrinsic right, and can only be asserted by a bona fide owner, assignee, or licensee of an exclusive copyright right. *Sybersound*, 517 F.3d at 1146. In short, contrary to the entire premise of the Righthaven enterprise, copyright owners are not permitted to assign their rights to sue independent of their ownership of the work sued upon. *Silvers*, 402 F.3d at 884 (holding that the right to sue is not an exclusive, assignable right under 17 U.S.C. § 106).

---

[1] *See* 17 U.S.C. §§ 412, 504(c), 505.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 2 -

If the *Las Vegas Review-Journal* (hereinafter, the "LVRJ") or its parent company, Stephens Media LLC (hereinafter, "Stephens Media"), were the plaintiffs in these cases, this argument would not apply.  But Righthaven's exercise in champerty seeks to make an end-run around the rule of law limiting the right to sue for copyright infringement to creators and those legitimate enterprises that make creativity possible and protectable.  Nobody can seriously believe that Righthaven, which publishes nothing anywhere, has acquired the full ownership of the articles it sues upon.  The assignments it secures – only after finding "infringed" articles to sue over – contain mysterious (and heretofore unexamined) language about a "right of reversion" which, on frank consideration, demonstrates how transparently illegitimate these "assignments" are.

Phony "assignments" are not the only venal and manipulative aspects of the Righthaven scheme.  By design, Righthaven sues mostly retirees who, terrified of losing their retirement savings, generally settle their cases quickly and without discovery.  But this Court should not restrain its own duty to inquire into the underlying law and facts on which both Righthaven's claims and Righthaven's coerced settlements are based when considering its decision on damages in this case.  This Court should hold serious doubts about the propriety of Righthaven bringing these suits with rights obtained from a third party that has no stated stake in this litigation or related cases.  Either the LVRJ and Stephens Media are "selling lawsuits," which is impermissible under *Silvers*, 402 F. 3d at 884-85, or Righthaven is simply a law firm in disguise, engaged in champerty, which is impermissible in Nevada, as it is almost everywhere legal ethics and fundamental justice are a concern of the law.  *Schwartz v. Eliades*, 113 Nev. 586, 589 (Nev. 1997); *Lum v. Stinnett*, 87 Nev. 402, 408 (Nev. 1971).  Without revealing exactly what exclusive rights Righthaven has acquired in the works, if acquiring any at all, Righthaven essentially buys the bare right to sue for copyright infringement – which purchase is banned by copyright law – and uses it to sue small website operators by the hundreds.  Left unchallenged, Righthaven's practices create a secondary commodities market for copyrights, or exclusive subsidiary rights in copyrights, to be used only in suing others who may have valid defenses, but cannot afford to

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

raise them – or engage counsel whatsoever, as is the situation in this case.  This is inimical to the purpose of the Copyright Act, which was intended to protect the intellectual investments of creators, rather than creating lawsuit mills that use registered copyrights – only after their infringement was discovered – as a source of income, rather than a shield against others' misappropriation.  *See Silvers*, 402 F.3d at 886.

In every Righthaven case, Righthaven discovered a small website or blogger's use of an article – which very well may have been fair use – and then claimed to acquire the story's rights, followed by a copyright registration and federal lawsuit.  This case follows the same formula.  A LVRJ article was published in print and on the LVRJ's website.  Thereafter, a blogger – Hyatt – posted a copy of it to his website.  (*See* Doc. # 1.)  Righthaven's Complaint alleges that the LVRJ published "FX's manly man shows hold outsider appeal" (hereinafter, the "Article") on or about September 5, 2010, and Hyatt republished this article on his website, <1ce.org>, on or about September 8, 2010. (Doc. # 1 ¶¶ 6, 9, 18, 20; Doc. # 1. Exhs. 1, 2.)  On October 6, 2010, approximately one month after discovering this infringement – but before filing suit – Righthaven registered the article's Copyright. (Doc. # 1 ¶ 19; Doc. # 1 Exh. 3.)

Hyatt failed to respond to Righthaven's Complaint (Doc. # 1), leading Righthaven to bring the Motion currently before this Court. (Doc. # 17.)   While this Court determines the outcome of the Motion, the Media Bloggers Association (hereinafter the "*Amicus*") seeks to provide additional information to the Court and assist it reach a reasonable, just conclusion in disposing of this case, as its membership frequently copies portions of newspaper articles in order to foster discussion on matters of public concern.  *Amicus* closely follows these issues and its participation in cases such as this one is integral to its mission of protecting the legal rights of bloggers, writers and other citizen journalists.  A constitutionally bizarre award in this case, such as that sought by the Righthaven enterprise, will create a chilling effect across the membership of *Amicus*, thus reducing the amount of discourse on matters of public concern generally.

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

## II. Argument

Righthaven's business model belies its argument for a large damage award against Hyatt, as well as an award of attorney's fees and costs. The monetary relief Righthaven seeks from Hyatt is so astronomical and disproportionate that this Court should limit it under the Due Process clause of the Constitution. The other form of relief Righthaven seeks, a turnover of Hyatt's domain name, is not available in Copyright cases, and it is high time that a court tell Righthaven so. Righthaven's desired relief should be denied in all cases, except for money damages, in which case its desired award should be reduced to nominal damages in the smallest amount allowed by law. *Amicus'* experience and depth of information in working with and representing bloggers lends an especially useful perspective to analyzing how this Court's award of damages to Righthaven would be devastating not only to Hyatt, but the blogging community as a whole.

## A. Righthaven's Business Model Does Not Support a Significant Damage Award, or Award of Attorney's Fees, Against Hyatt.

Righthaven's business model is simple, cynical, and ethically questionable. Righthaven finds instances of infringement relating to newspaper articles and pictures of essentially trivial economic value on blogs and other small websites without significant readership, advertising or other resources. After finding these instances of infringement, Righthaven purports to purchase the rights to the allegedly infringed work from Stephens Media, which for some reason does not have the confidence in its case to place its name on the complaints as a plaintiff.

These agreements between Stephens Media and Righthaven do not identify what Rights Righthaven has purchased. A true and correct copy of the assignment of rights from Stephens Media to Righthaven for the article "Marijuana as Medicine," is attached hereto as Exhibit 1. This is impermissible within the Ninth Circuit, as courts have held that the six rights inherent in an owner's valid copyright[2] cannot be unbundled from the right to sue for infringement. *Sybersound*, 517 F.3d at 1145-46; *Silvers*, 402 F.3d at 887. An exclusive ownership interest,

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

---

[2] 17 U.S.C. § 106.

1    assignment or license of an exclusive copyright right under 17 U.S.C. § 106 is required for

2    Righthaven to be able to sue alleged copyright infringers. *Sybersound*, 517 F.3d at 1145-46;

3    *Silvers*, 402 F.3d at 887.   Without specifying what rights transfer from Stephens Media to

4    Righthaven, Exhibit 1 shows that Righthaven acquires only the copyrights "requisite" to be

5    recognized as the copyright owner of the work for the purposes of claiming ownership and

6    seeking redress for past and future infringement.  (Exh. 1 at 1.)   No rights are identified or

7    explained, and Righthaven impermissibly purchases only those rights necessary to give it

8    standing to sue those who infringed on that article – without any mention of exclusivity.  (*Id.*)

9    Meanwhile, these very articles that Righthaven claims to have acquired the rights to are still

10   available for sale in the LVRJ's archives.  Declaration of J. Malcolm DeVoy ¶¶ 2-7.

11          Righthaven's agreements with Stephens Media include a mysterious "right of reversion"

12   that allows whatever rights Righthaven does acquire to revert back to Stephens Media under

13   circumstances unspecified in the parties' written agreement.[3]  (*Id.*)  This raises serious questions

14   as to whether Righthaven truly owns the copyright at all, as it can revert to Stephens Media

15   under unexplained circumstances.  To date, this is the only copyright assignment that *Amicus* has

16   seen from Righthaven, and likely the only one seen by the Court, as no other Righthaven cases

17   have advanced to the discovery phase of litigation.   *Amicus* – and to the best of *Amicus*'

18   knowledge, this Court – has no definitive knowledge as to what rights Stephens Media transfers

19   to Righthaven in these agreements other than an attempt to impermissibly assign the bare right to

20   sue.  Based on Exhibit 1, there is serious doubt as to whether these rights are exclusive as

21   required by copyright law in order to be enforceable, and whether these rights even permit

22   Righthaven to sue others for alleged instances of copyright infringement.

23          The logical inference from what is known of Righthaven's acquisition of these copyright

24   rights from Stephens Media and their conduct in litigation is that Righthaven uses these rights

25   only to sue others.  Righthaven has no interest in protecting Stephens Media's content, and uses

26

27   ─────────────────────────
[3] To date, Righthaven seems to have carefully chosen its victims in order to avoid litigating its cases against anyone
28   with the resources to pursue discovery, including depositions of former LVRJ Publisher Sherman Frederick,
     Righthaven CEO Steve Gibson, and other officers of Stephens Media and Righthaven with relevant information.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

these copyrights acquired – with a reversion to Stephens Media – simply to sue small site operators for illusory damages.  This is not to say the articles are worthless:  In fact, while they are available online for free, the LVRJ attempts to sell each article available on its website for the handsome sum of $2.95.  A true and correct copy of the purchase screen for LVRJ articles, including that for the Article at issue in this case, is attached as Exhibit 2; see DeVoy decl. ¶¶ 3-5, 6-7.  It is unknown what ratio of people who view these stories purchase them, or what the LVRJ's profit margin is from these article sales at $2.95 each; to date, Righthaven has not produced any evidence addressing either of these margins – nor would it likely be able to do so, if any defendant had the resources to vindicate its rights in these cases.

These reversionary, vaguely worded agreements between Righthaven and Stephens Media additionally suggest that the two are not engaged in an arm's length relationship with respect to Righthaven's acquisition of Stephens Media's copyright rights.  (Exh 1 at 1.)  These agreements further evidence that damage-recovery litigation is the sole purpose of Righthaven's existence, rather than any anti-piracy enforcement of rights in content Righthaven produces or owns.  As such, Righthaven has no entitlement to damages, especially large damages, as the bare right to sue cannot be acquired without other specific, exclusive rights in the copyrighted material.  *Sybersound*, 517 at 1143-44.  Even if the litigated uses were infringing, Righthaven acquired its rights to sue for infringement with knowledge that a possible infringement existed as part of its business model, and should not be accorded the full rights of a copyright owner, assignee or licensee using the content for expressive purposes.  *Id*.

When Righthaven first began suing others for alleged infringements, Sherman Frederick, then-Publisher of the LVRJ,[4] analogized the defendants' use of the LVRJ's content to driving away with his Corvette.[5]  Interestingly enough, Mr. Frederick's company never sued to enforce its rights, but rather decided to commoditize those rights, transferring them to Righthaven for

---

[4] J. Patrick Coolican, *Review-Journal Publisher Sherman Frederick, Editor Thomas Mitchell Out*, Las Vegas Sun (Nov. 12, 2010), *available at* http://www.lasvegassun.com/news/2010/nov/12/review-journal-publisher-sherman-frederick-editor-/ (*last accessed* Feb. 22, 2011).
[5] Sherman Frederick, *Copyright theft: We're Not Taking It Anymore*, Las Vegas Review-Journal (May 28, 2010), *available at* http://www.lvrj.com/blogs/sherm/Copyright_theft_Were_not_taking_it_anymore.html (*last accessed* Feb. 20, 2011).

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

unexplained reasons.  To continue the car analogy, Righthaven's model is the equivalent of buying broken cars in order to sue whoever may have damaged them prior to the sale.  In short, Righthaven is engaged in a callow use of the Copyright Act to create a litigation brokerage – not to vindicate rights envisioned by the Copyright Clause.

As Righthaven has no legitimate interest in whatever copyright rights it possesses in the Article, and other articles and photos it putatively acquires the rights to, Righthaven is entitled to no more than nominal damages – if that.  Righthaven is not a content producer trying to preserve its relevant market from the unceasing raids of content pirates, but a dedicated litigation house that acquires rights from other entities solely to sue essentially defenseless "infringers" for their supposed infringement.  If Stephens Media or the LVRJ had sued to protect content it produced and the market for it, an argument for more than nominal damages might be tenable. Righthaven, however, has not suffered any financial harm whatsoever from the infringement it alleges – for if any damages occurred, they occurred before Righthaven procured the copyright. Righthaven's damages, if any, should be only enough to observe that infringement occurred. Righthaven does not suffer any harm from lost profits or a lost market for the work, as it does not produce or sell content, but merely acquires rights in it to file lawsuits such as this one, and if this Court awards Righthaven its outrageous demand, it will simply throw gasoline on the fire of Righhaven's unethical copyright trolling and attorney-fee-generation scheme.

This model, if sustained by law and emboldened by this Court granting Righthaven the damages it seeks, poses a singular and unique threat to *Amicus*' membership.  The interests of bloggers acting under *Amicus*' umbrella will be adversely affected by any award of damages granted to an entity that collects illusory copyright rights for the sole purpose of litigation. Those served by *Amicus* will have no idea how to protect themselves from costly litigation against a party they could not have foreseen acquiring copyright rights, and thus will limit their liability by taking the safest, least creative path of minimal resistance: The path of silence.  Such an award would contract the marketplace of ideas, especially online, depriving the group served

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 8 -

by *Amicus* of expression and harming others' access to information about newsworthy and timely subjects.

Simultaneously, *Amicus*' membership possesses legitimate copyrights that they themselves have cultivated and may seek to protect from infringement in the future.  These efforts will require litigation against infringers, which *Amicus* fears courts will meet with a jaundiced eye after witnessing the way in which Righthaven litigates its cases, including this one. Thus, content creators and other legitimate copyright holders fear that Righthaven's business practices and legal tactics will poison the well of judicial relief, making courts and the public skeptical of copyright infringement cases[6] – even where the original creators of copyrighted works sue in good faith to defend their creations and preserve the marketplace in which they are sold.

Moreover, as Righthaven is designed solely to acquire rights and litigate them, it does not deserve the attorneys' fees and costs awards granted to content producers who must undertake

---

[6] For as long as Righthaven has existed, its lawsuits and tactics have received significant and sustained media criticism both locally and nationally. *See, e.g.,* Steve Green, *Flood of Righthaven Copyright Lawsuits Lifts Total to 225*, Las Vegas Sun (Jan 28, 2011), *available at* http://www.lasvegassun.com/news/2011/jan/28/flood-righthaven-copyright-lawsuits-lifts-total-22/ (*last accessed* Feb. 22, 2011); Steve Green, *Blogger, Websites Sued by Righthaven Over 'TSA Advanced Patdown' Photo*, Las Vegas Sun (Jan. 24, 2011), *available at* http://www.lasvegassun.com/news/2011/jan/24/blogger-websites-sued-righthaven-over-tsa-enhanced/ (*last accessed* Feb. 22, 2011); Steve Green, *Righthaven Extends Copyright Lawsuit Campaign to Individual Web Posters*, Las Vegas Sun (Jan. 12, 2011), *available at* http://www.lasvegassun.com/news/2011/jan/12/righthaven-extends-copyright-lawsuit-campaign-indi/ (*last accessed* Feb. 22, 2011); Steve Green, *Ties Between Stephens Media, Righthaven Copyright Lawsuit at Issue*, Las Vegas Sun (Dec. 8, 2010), *available at* http://www.lasvegassun.com/news/2010/dec/08/ties-between-stephens-media-righthaven-copyright-l/ (*last accessed* Feb. 22, 2011); David Kravets, *Righthaven Expands Troll Operation with Newspaper Giant*, Wired (Dec. 7, 2010), *available at* http://www.wired.com/threatlevel/2010/12/righthaven-expands-trolling/ (*last accessed* Feb. 22, 2011); Steve Green, *Judge to Righthaven: Show Why Lawsuit Shouldn't Be Dismissed*, Las Vegas Sun (Nov. 22, 2010), *available at* http://www.lasvegassun.com/news/2010/nov/22/judge-righthaven-show-why-lawsuit-shouldnt-be-dism/ (*last accessed* Feb. 22, 2011); David Kravets, *EFF Sues Newspaper Chain's Copyright Troll*, Wired (Sept. 29, 2010), http://www.wired.com/threatlevel/2010/09/righthaven-sham/ (*last accessed* Feb. 22, 2011); Mike Masnick, *Righthaven Continues to Stretch the meaning of Copyright Law in Filing Lawsuits*, Techdirt (Aug. 12, 2010), http://www.techdirt.com/articles/20100812/01454910601.shtml (*last accessed* Feb. 22, 2011); Steve Green, *Websites, Bloggers Make Moves to Avoid Righthaven Lawsuits*, Las Vegas Sun (Aug. 9, 2010), *available at* http://www.lasvegassun.com/news/2010/aug/09/websites-bloggers-make-moves-avoid-righthaven-laws/ (*last accessed* Feb. 22, 2011); Steve Green, *Some Targets of Righthaven Lawsuits Fighting Back*, Las Vegas Sun (Aug. 4, 2010), *available at* http://www.lasvegassun.com/news/2010/aug/04/some-targets-righthaven-lawsuits-fighting-back/ (*last accessed* Feb. 22, 2011); Mike Masnick, *Righthaven Ramping up its Copyright Trolling Business*, Techdirt (July 23, 2010), http://www.techdirt.com/articles/20100722/03152710320.shtml (*last accessed* Feb. 22, 2011); Mike Masnick, *Newspaper Publisher Defends Filing 22 Copyright Lawsuits Against Sites Who Copied Text…With Links Back*, Techdirt (June 4, 2010), http://www.techdirt.com/articles/20100604/0425069685.shtml (*last accessed* Feb. 22, 2011).

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

legal action to arrest infringement.  Righthaven's litigation-factory model accounts for, or should account for, the costs of litigation.  Righthaven does nothing but find infringements (before acquiring and registering the relevant copyright) and sue on them.  As the sole purpose of Righthaven is to incur the costs of costs litigation, recovering costs and attorneys' fees from a defendant in this and similar cases is unseemly.  These are not the costs borne by a copyright holder seeking in good faith to stop rank infringement and widespread piracy of its content. Instead, any award of attorneys' fees or costs will turn Righthaven's damage award into pure profit, eliminating the costs of litigation inherent in its business model and effectively granting Righthaven an impermissible double recovery. *See, e.g., Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 535 (9th Cir. 1962).

**B. Righthaven is not Entitled to the Relief it Seeks.**

### 1. Due Process Limits Righthaven's Entitlement to Money Damages.

The Due Process clause of the U.S. Constitution has long been a source of limitation on all forms of damages awarded in judicial proceedings.  Damages beyond those actually suffered by a plaintiff, awarded as a deterrent against similar unlawful acts in the future – known as exemplary damages – have been tightly limited by the courts under the Due Process clause. *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 42 (1992); *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003).  Because these exemplary damages may become detached from the harm actually caused to the plaintiff by defendant, these awards may fail to serve any legitimate purpose, and instead hold a "devastating potential for harm."  *Campbell*, 538 U.S. at 417.

This due process protection is both substantive and procedural in nature.  *See Id*.  Courts analyze three figures in relation to any award of exemplary damages to determine whether any such award is grossly excessive:

1) The degree of reprehensibility of the defendant's conduct;
2) The disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and
3) The difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in similar cases.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

1  *Id*. at 418; *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436 (2001); *BMW*
2  *of N. Am. v. Gore*, 517 U.S. 559, 575 (1996).   Though the Court has not yet awarded any
3  damages in this case, the third factor, weighing the difference between awarded damages in this
4  case and the penalties authorized in similar cases, should consider the damages sought by
5  Righthaven in comparison to those authorized in other cases.

6  This analysis and scrutiny applies to the Copyright Act, just as it does to any federal law.
7  Every act of Congress, including the enactment of the Copyright Act, is subject to due process
8  limitations on account of the Fifth Amendment's limits on Congress' power.  *Nebbia v. N.Y.*, 291
9  U.S. 502, 510 (1934).   These statutory damages allow by the Copyright Act serve the same
10  purpose as punitive damages awarded by a jury (to punish and deter unlawful conduct) and
11  therefore require the same level of constitutional scrutiny.

12  In determining the measure of statutory damages to be awarded, courts consider the
13  following factors:

14  [E]xpenses saved and profits gained by the defendants in connection with the
15  infringements; revenues lost by plaintiffs as a result of defendants' conduct; and the
16  infringer's state of mind, that is, whether willful, knowing, or merely innocent.
17  Moreover, the court should consider the purposes of the Copyright Act, including
18  restitution to prevent unjust enrichment, reparation of injury, and deterrence of further
19  wrongful conduct by the defendants and others.

20  *Walt Disney v. Video*, 47, 972 F. Supp. 595, 603 (S.D. Fla. 1996) (citations omitted).  "'Willful'
21  refers to conduct that occurs with knowledge that the defendant's conduct constitutes copyright
22  infringement.' . . . The determination of willfulness is a question of fact reserved for the jury."
23  *Id*.   Here there is no basis for the Court to find such willfulness, though.   As explained in
24  *Nintendo of Am. v. Ketchum*, 830 F. Supp. 1443, 1445 (M.D. Fla. 1993), even where willfulness
25  has been established, this is not the end of the inquiry when evaluating the issue of statutory
26  damages

27

28

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

[I]n exercising its discretion, the Court may consider several factors including the expenses saved and profits reaped by infringer, revenues lost by copyright holder as a result of infringement, and infringer's state of mind, whether willful, knowing or innocent. . .

Although Plaintiff has suggested in its motion that the "Defendants saved substantial license revenue expenses and reaped enormous profits," Plaintiff has offered no evidence of the expenses saved by Defendants for licensing fees, etc.  Plaintiff has simply asked this Court for an arbitrary amount of $50,000 per infringement based upon the finding of willful conduct.

The fact that the Defendants acted willfully and knowingly has been established by the evidence presented by Plaintiff.  Defendant Ketchum has pled guilty to criminal charges in North Carolina of knowingly and intentionally disseminating counterfeit cartridges. Defendant Brinson, owner of Superior Video, has admitted his knowledge that Ketchum and Isom were selling and distributing counterfeit cartridges from his store.  Thus the existence of culpable conduct is clear.

Taking all of these factors into consideration, along with the purposes of the Copyright Act, this Court finds that the copyright holders are entitled to statutory damages in the amount of $2,000 for each of the twelve infringements, under 17 U.S.C. § 504(c)(2), for a total of $ 24,000.

*Id.* at 1445 (citations omitted).  *See also*, *Morley Music Co. v. Cafe Continental, Inc.*, 777 F. Supp. 1579, 1583 (S.D. Fla. 1991) (upon finding of willfulness and repeated infringement of seven works and defendants' avoidance of "$ 2,582.91 in license fees, the court finds that statutory damages in the amount of $ 1,500 per infringement appropriate").

A similar treatment of the matter can be seen in a case from the Southern District of New York, even in the face of the situation that obtains here – a defendant's default.  The case involved pirated pay-per-view broadcasts, but the court was unwilling to bring down the wrath of

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

heaven in the form of statutory damages when considering the reality of the economic picture at bar:

> Some courts . . . have concluded that a defendant's default itself could be viewed as evidence of willfulness [or make similar inferences based on profit motive to infringe]. . . [But] the plaintiff has failed to offer credible evidence that an enhanced damages award in the exorbitant amount of $100,000, or something in that range, is necessary to accomplish the goals of the statute, i.e., the use of enhanced damages to alter the economic expectations of prospective violators. Regardless, even in the case of a default judgment, a plaintiff must do more than gesture at an inference to support its request for enhanced damages. *Garden City Boxing Club, Inc. v. Ayisah*, No. 02-CV-6673, 2004 U.S. Dist. LEXIS 7867, at *5 (S.D.N.Y. April 28, 2004) ("plaintiff must . . . substantiate a claim with evidence to prove the extent of damages").
>
> In addition, the value of deterrence must be balanced against the inequity of imposing heavy financial burdens on small businesses. The sting of an enhanced award should not be greater than deterrence requires and fairness allows. Thus, I award Joe Hand an additional $1,500 in enhanced damages from each defendant. This enhancement is not so large that it will spell financial ruin for the small businesses involved, especially if, as I suggest, Joe Hand allows installment payments over the course of a year or more, but it is large enough to raise the dollar amount of the penalty above the cost of obtaining a commercial license, and, for businesses of this size, should be a sufficient deterrent to avoid future violations.

*Joe Hand Promotions, Inc. v. Hernandez*, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (some citations omitted). In so ruling, the court cited *Doehrer v. Caldwell*, 1980 U.S. Dist. LEXIS 10713 (N.D. Ill. 1980), which taught as follows:

> A mechanical application of the statutory damage provision of the Copyright Act leads to absurd results. While Section 504's compensatory purpose should not be minimized, its deterrent provisions should not be converted into a windfall where, as a practical matter,

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 13 -

the plaintiff has suffered only nominal damages.  It is clear from the legislative history of the Copyright Revision Act of 1976 that Section 504 was designed, in part, "to provide the courts with reasonable latitude to adjust recovery to the circumstances of the case, thus avoiding some of the artificial or overly technical awards resulting from the language of the existing statute."  S. Rep. No. 94-473, 94th Cong., 2d Sess., reprinted in CCH Copyright Revision Act of 1976 P2042. . . .

The fact that statutory damages are not to be regarded as penalties, and that their purpose is to permit a wronged plaintiff to recover where there is insufficient proof of actual damages or profits, has been recognized as rising to the level of due process limitations in numerous other recent copyright cases.  Predicated by other courts' expectations that constitutional due process protections would apply to statutory damages copyright infringement,[7] two courts have used the due process clause to limit the damages available in copyright infringement cases based on users uploading songs on peer-to-peer networks.  In *Capitol Records v. Thomas-Rassett*, 680 F. Supp. 2d 1045, 1048 (D. Minn. 2010), the court limited the infringer's damages to $2,250 per infringement – three times the statutory minimum of $750.  While the court noted that this was a "significant and harsh" punishment, due process required "some" relationship between the damages suffered by the plaintiff and the damages imposed on the defendant.  *Id*. at 1049, 1053. The *Thomas-Rassett* court even noted that the $2,250 cap on damages for infringement was higher than the court would have imposed, but was an appropriate remittitur of the jury's $2,000,000 damages award based on plaintiff's sharing of 24 songs.  *Id*. at 1049.

By a similar decision, the District of Massachusetts reaffirmed this $2,250 limitation for instances of willful song sharing in *Sony BMG Music Entertainment v. Tenenbaum*, 721 F. Supp. 2d 85, 117 (D. Mass. 2010).  In her opinion, Judge Gertner held that $2,250 – three times the statutory minimum damages allowed in 17 U.S.C. § 504(c) – was the "outer limit" of damages

---

[7] *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 768, 778 n.6 (N.D. Ill. 2008) (suggesting that *State Farm* might provide grounds for reducing statutory damages awarded under the Telephone Consumer Protection Act); *Leiber v. Bertelsmann AG (In re Napster, Inc. Copyright Litigation)*, No. C MDL-00-1369 MHP, C 04-1671 MHP, 2005 WL 1287611, at *10-11 (N.D. Cal. June 1, 2005) (suggesting in dictum that the court would apply *Gore* and *State Farm* in considering whether statutory damages for copyright infringement were unconstitutionally excessive).

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

that could constitutionally be imposed in such a case.  721 F. Supp. 2d at 117.  The opinion went on to note that while drawing a line in the sand of $2,250 in song-sharing cases may be controversial, any line-drawing is controversial, even when required by due process and the Constitution.  *Id*.  This limitation was based on the evidence adduced at trial regarding the recording studio plaintiffs' actual damages from the defendant's file-sharing, which revealed a damages-to-lost profits ratio between 22,000 and 32,000 to 1, far higher than the 114:1 ratio of punitive to compensatory damages permitted in *Williams*.  *Id*. at 112-14.

In this case, no evidence of Righthaven's actual damages has been introduced to the court, though it would have to be at least $263.16[8] from Hyatt's infringement alone to remain within *Williams'* constitutional threshold, reinforced by *Tenenbaum*.  This evidence has not been presented to the Court, and to *Amicus'* knowledge does not exist, and thus any award of damages in the range sought by Righthaven would be speculative and based wholly on conjecture.  Indeed, it strains the imagination to conceive how Righthaven could show *any* damages, considering that Righthaven acquired the copyright in question only *after* determining that it the work been used by the defendant.  If copyright infringement makes the original work "damaged goods," thus entitling the author to compensation, then damages are appropriate.  But, when a get-rich-quick scheme is premised on buying damaged goods after the damage occurs, the get-rich-quick scheme itself should not be compensated for specious "losses" to an "asset" it would never have bought but for the supposed infringement.  In fact, it is far from clear that the LVRJ and Stephens Media effectively sold the rights to the work at all.  The entire enterprise is so unseemly and questionable that it is not clear that this Court, as a due process matter, should even award the *minimum* statutory minimum of $750.

It is instructive to consider the one case where the amount Rigthhaven received to conclude its lawsuit is known, *Righthaven LLC v. National Organization for the Reform of Marijuana Laws ("NORML")*, in which the defendant filed a Rule 68 offer of judgment for

---

[8] This number was achieved by dividing $30,000 – Righthaven's minimum sought damages – by 114, the factor identified in *Williams* and *Tenenbaum* as the threshold for due process to be preserved.  30,000/114 = 263.157, which was rounded up to 16, the smallest sum accounted for by U.S. currency, which would remain under the *Williams* factor of 114.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

$2,185.00.   Case No. 2:10-cv-0351, Offer of Judgment, Doc. # 30-1 at 2 (D. Nev. filed Jun. 4,

2010).  To arrive at this amount, NORML multiplied the total resale cost of the infringing article

– $2.95 – by the 247 people who *possibly* could have viewed it as a result of NORML's

infringement.  *Id*.  NORML did not identify what portion would have been the copyright holder's

profits, but determined the total amount of revenue that could have *possibly* been lost due to

NORML's actions was $728.65[9].   NORML then tripled this amount, arriving at the amount it

offered as judgment: $2,185. *Id.* at 2.  Righthaven accepted this offer of judgment. Case No.

2:10-cv-0351, Acceptance of Offer of Judgment, Doc. # 30 (D. Nev. filed Jun. 4, 2010).

This amount, accepted by Righthaven less than nine months ago as sufficient value for

copyright claims virtually identical to those made here, is a mere 7.3%[10] of what Righthaven

seeks from Hyatt in damages – by virtue of a default judgment.   At the same time, publicly

available information reports that the settlement amounts for these Righthaven cases has steadily

increased since they began, from $2,000-$3,000, then to $3,000-$5,000, to now, inexplicably,

$6,000.[11]   Righthaven has not presented a single piece of evidence as to the market damage

suffered by it, the LVRJ or Stephens Media due to the allegedly infringing republication of the

articles and photos in the cases it has brought before this Court. All of these settlements

Righthaven has secured to date are likely to be factors greater than the LVRJ's or Stephens

Media's lost revenues.  These settlements are bound to be an even larger multiple of the LVRJ's

or Stephens Media's lost *profits*, which are the copyright holder's ultimate monetary gain

derived from the article's sale.

Large or small, however, the amounts both procured by Righthaven in other cases and

sought by Righthaven in this matter ultimately violate due process.  In *Tenenbaum* and *Thomas-

Rassett*, the courts in those cases found that $2,250 was the outer constitutional limit of damages

for knowingly and intentionally sharing *songs* on a peer-to-peer network, and this intentional

---

[9] $2.95 multiplied by 247 is $728.65.

[10] 2,185 divided by 30,000 is 7.28333; this amount was rounded to the closest tenth.

[11] "Fairuser," *Price Increase: Righthaven Now Asking Bloggers for $6,000 to Avoid Trial*, Righthaven Victims (Feb. 15, 2011), http://righthavenvictims.blogspot.com/2011/02/price-increase-righthaven-now-asking.html (*last accessed* Feb. 20, 2011).

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

sharing of complex media like songs takes place on a network where republication is rampant, thus exacerbating the damages.  This case, as the other Righthaven cases like it, compels a lower range of damages because of the social function achieved by sharing otherwise stale news stories of trivial economic value and minimal creative content, especially when buttressed by the doctrine of fair use.  *See Las Angeles News Svc. v. Reuters Tv Int'l*, 149 F.3d 987, 994 (9th Cir. 1998) (holding that facts are not subject to copyright).  Notwithstanding the presumptions permitted in a default, as a public policy matter and a matter of judicial integrity, this Court is obliged to consider the underlying merits of the claim and the propriety of the application of statutory damages to this situation.  *See Joe Hand Promotions, Inc*, 2004 U.S. Dist. LEXIS 12159, *supra*.  Here, Hyatt's use of the Article in this case is arguably a non-infringing fair use, as has been true of other cases before this Court.  *Righthaven LLC v. Realty One Group, Inc.*, 38 Med. L. Rptr. 2441 (D. Nev. 2010) (finding the defendant's use of a LVRJ article to be non-infringing fair use).

Moreover, a finding that Hyatt was an innocent infringer – entirely appropriate on this record – would limit his damages to only $200,[12] less than 1% of the baseline $30,000 Righthaven seeks in its Motion (Doc. # 17),[13] or even nothing at all[14].  An innocent infringer is entitled to a significant reduction in damages, even below the statutory minimum set forth in 17 U.S.C. § 504(c).  *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978).  In this case, Hyatt may have believed he had an implied license to share the Article, as there was a link encouraging viewers to e-mail the Article to others on the page where it appeared. (Doc. # 1 Exh. 1.)  In other cases, this Court has considered the fact that the defendants were not aware of the content at issue's original source, or that they did not have any notice that it was a third party's intellectual property.  *See, e.g., Righthaven LLC v. Wilcox*, Case No. 2:10-cv-01192, Def.'s Mtn. to Dismiss at 3:3-4:6 (D. Nev. filed Sept. 10, 2010) (explaining how content of unknown origin could appear on a defendant's website without his or her action or knowledge).

---

[12] 17 U.S.C. § 504(c)(2).
[13] 200 divided by 30,000 is .00666, rounded to .007 – the equivalent of 0.7%.
[14] 17 U.S.C. § 406.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

For the sake of other bloggers and even other defendants in pending Righthaven lawsuits, this Court's demarcation of a clear line in the sand will return a level of certainty to the emerging social and cultural force that is internet journalism.  Left unchecked, the inexplicably steep upward trend in Righthaven's settlement demands, now reaching a crescendo with the Motion before this court for at least $30,000 in damages, is certain to chill internet users from expressing themselves where, as is common enough, they do not understand the far-from-intuitive limits of fair use of copyright-protected materials.  Righthaven's copyright trolling will continue to have this effect until some kind of cap or limiting guideline is placed upon what Righthaven may recover for the alleged infringements of works with which it has essentially nothing to do and which it has pursued for almost a year.  Such a constitutionally compelled limitation on damages will serve the important purpose of protecting expression and guarding the flow of information, commentary and expression of issues of public interest, consistent with *Amicus*' goals and the objectives of its constituency and with the First Amendment.

### 2. This Court Does Not Have Jurisdiction to Order a Domain Name Turnover in This Case.

Righthaven's request for this Court to order the turnover of Hyatt's domain name where the copyright infringement allegedly occurred – <1ce.org> – cannot be granted.  Domain names are tremendously valuable assets to bloggers, and can accrue value because of their intrinsically high visibility (e.g., <news.com>), or acquired worth through the awareness and visits earned by high-quality or unique content, or some other selling proposition (e.g., <drudgereport.com>). Thus, a domain name is an important commodity to bloggers and one that must be protected, a blog's loss of its unique domain name would cripple it, if not destroy it outright.  Thus, within the Ninth Circuit, domain names are regarded as intangible personal property that cannot be subject to turnover orders in copyright cases.[15]  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1143-44 (9th Cir. 2010); *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003).  Like California's

---

[15] Personal intangible property, including domain names, can be seized to satisfy an unpaid judgment. *See Kremen*, 337 F.3d at 1024.  It is improper, however, for the Court to order a turnover of the property, especially when the Defendant has the option to pay (or not pay) and avoid a judgment in which the domain name may be seized. *Id.*

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

approach to intangible personal property, articulated in *Kremen*, Nevada recognizes it as something that embodies "every intangible benefit and prerogative susceptible of possession or disposition." *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 543 (Nev. 2008), citing *Kremen*, 337 F.3d at 1030.  Therefore, just as California's property laws extend this protection to domain names, the rule of *Crestdale* compels the conclusion that Nevada, too, would extend the same protections to website domain names.

Indeed, the identicalness of Nevada's and California's law in this respect compels identical results.  The remedy sought by Righthaven is only allowed in trademark cases, pursuant to 15 U.S.C. §§ 1125(d)(1)(C) and (d)(2)(D), where cybersquatting has occurred – a breach of trademark law that is utterly unrelated to copyright infringement, the only claim alleged in this case.  *See Caeser's World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1206 (D. Nev. 2003) (recognizing domain transfer as a valid remedy solely for trademark infringement).  Righthaven has not alleged trademark infringement here, nor could it do so on the facts presented.  Thus, there is no legal basis for the Court to order Hyatt to transfer its <1ce.org> domain to Righthaven.

**C. Attorney's Fees May be Proper in Copyright Cases, But Not For Righthaven.**

Righthaven should not be awarded attorneys' fees or costs in this action.  The Ninth Circuit allows its courts to authorize attorneys' fees and costs to be awarded *at their discretion* in copyright cases, pursuant to 17 U.S.C. § 505.  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614-15 (9th Cir. 2010).  Such awards are not automatic.  *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (finding that attorneys' fees and costs are not awarded as a matter of course under 17 U.S.C. § 505); *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230-31 (9th Cir. 2008) (affirming the lower court's refusal to award attorneys' fees and costs under 18 U.S.C. § 505).

The facts weigh heavily against any award of attorneys' fees or costs to Righthaven under 17 U.S.C. § 505.  Righthaven's success in this case is premised on an overmatched party's total failure to appear, rather than the strength or cogency of its legal position or the sympathetic

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

factual nature of its dubious claims of harm.  Because Hyatt could have asserted the fair use defense and prevailed, particularly in light of this Court's *Realty One Group* decision, the Court should be mindful of how a monstrous award here – even if only "symbolic" – would chill free speech in other fair use cases.  Righthaven's entire "business model" is premised on cheap, exploitative litigation against mainly unschooled and defenseless individuals, described in Sections I and II A hereof.  It should bear the costs of litigating its cases as part of that business model, as it was conceived to do.  This factor weighs particularly heavily against Righthaven, as it is not protecting content it created or invested in during its "useful life," but bought unspecified rights in works solely so it could sue Hyatt and others after trawling the Internet for possible instances of infringement – a fee-generating litigation business.   The needs of compensation and deterrence weigh *against* Righthaven receiving any attorneys' fees or costs award, for, if anything, it is Righthaven's conduct that should be deterred.  Any compensation for losses it never suffered should be derived solely in any damages award by this Court, which should reflect the minimal-to-nonexistent harm Hyatt's conduct inflicted on Righthaven.

Indeed, it is not the intent of bloggers to "rip off" or damage the markets for the publications that supply them with reporting and other facts that are used as the foundation for commentary and other analysis.  The "blogosphere" and traditional media exist in a symbiotic relationship, in which blogs generate significant traffic to the sources they credit for works created by the latter and give new life to what would otherwise be essentially dormant online archives.  Such traditional outlets recognize the benefit of bloggers to their online presences and are in the best position, in their own right, to correct and manage bloggers who may overstep the bounds of fair use – ideally in advance of initiating scorched-earth litigation.    In contradistinction, Righthaven, having never produced any content, is an outsider to this relationship.  Righthaven has no interest in protecting the market for content – only the market for dubious copyright litigation conducive to shakedowns of individuals who have become citizen journalists or commentators but will never be copyright experts.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

To award attorneys' fees to Righthaven, which has premised its existence on acquiring rights in order to sue others for infringement and whose primary source of revenue is settlements and judgments generated by needless and completely avoidable litigation, would be a slap in the face of the Copyright Act and would mock its very purpose. *Amicus* represents copyright holders and supports the exercise of discretion by courts to award attorneys' fees and costs under 17 U.S.C. § 505 in appropriate cases. But *Amicus* opposes the award of fees and costs in this case – and similar cases – because of the obvious dissimilarities between content creators and Righthaven's exploitative use of intellectual property as litigation fodder. Copyrights exist to protect creators and publishers – not create a secondary market for lawsuits.

**Conclusion**

Hyatt's damages in this case should be minimal, and Hyatt should not be required to pay Righthaven's attorneys' fees or costs. Righthaven's entire model for existence is highly suspect under prevailing copyright law in this District, especially with respect to the rights it acquires, if any, from Stephens Media, and what right they give Righthaven to sue alleged infringers. Righthaven protects nothing but itself and serves no purpose but to sue others who may have valid defenses to infringement but, as in this case, cannot afford to raise them. It has no interest in producing or protecting the market for original content. Righthaven is so divorced from the original works that its actual damages are so minimal that even nominal damages will be far out of proportion with Righthaven's actual harm. Similarly, as a litigation-creating machine, an award of attorneys' fees to Righthaven would effectively be a double recovery.

Because of the complete and utter lack of harm experienced by Righthaven in such cases, the damages it seeks via settlement and now by the pending Motion (Doc. # 17) are far out of proportion to its actual financial harm. The proportions of Righthaven's desired recovery compared to its actual harm are beyond those that have been authorized by the Supreme Court, and due process compels their reduction. As in *Tenenbaum* and *Thomas-Rassett*, willful infringer cases that did not have the compelling First Amendment defenses available to Hyatt and similarly situated defendants, this Court should set a defined limit as to what due process

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

will allow for recovery, and that limit should be as close as possible to the Copyright Act's statutory minimum damages of $750.  As for Righthaven's request to have the Court order <1ce.org>'s turnover from Hyatt to Righthaven, such a remedy is not available in this case.

While individual courts within the Ninth Circuit have discretion to authorize awards of attorneys' fees and costs under 17 U.S.C. § 505, this case does not warrant such an award in Righthaven's favor.  All of the factors for determining whether an award should be given to a prevailing party weigh against Righthaven in Hyatt's favor.  While this decision is ultimately the Court's, it is consistent with precedent to deny this relief to Righthaven.


Dated February 23, 2011                                       Respectfully Submitted,

                                                              RANDAZZA LEGAL GROUP




                                                              _____
                                                              J. Malcolm DeVoy IV
                                                              Marc J. Randazza

                                                              Co-Counsel:
                                                              Ronald D. Coleman
                                                              GOETZ FITZPATRICK LLP

                                                              Attorneys for *Amicus Curiae*,
                                                              *Media Bloggers Association*

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113