SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>BILL HYATT, an individual,<br><br>Defendant. | Case No.: 2:10-cv-01736-KJD-RJJ<br><br>**RIGHTHAVEN LLC'S REPONSE TO *AMICUS CURIAE* MEDIA BLOGGERS ASSOCIATION'S BRIEF** |

Righthaven LLC ("Righthaven") hereby responds to *amicus curiae* Media Bloggers Association's ("MBA") Brief (the "Brief"; Doc. # 19-1).

Righthaven's response is based on the below memorandum of points and authorities, the declaration of Steven A. Gibson (the "Gibson Decl."), the declaration of Mark A. Hinueber (the "Hinueber Decl."), the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.        INTRODUCTION**

MBA's belated appearance in this action as *amicus curiae* capacity comes several months after this case was filed, after default has been entered against the sole defendant, Bill Hyatt (the "Defendant"), and long after Righthaven has filed a motion for default judgment and a proposed order.  While MBA has asserted that it "has no fiscal or direct interest in this litigation, but it is concerned about its outcome by virtue of its organizational mission" (Doc. # 19 at 2), its Brief is nothing more than one of several serial attacks lodged against Righthaven's standing to sue for infringement based on the conspiratorial conjecture of the Strategic Alliance Agreement (the "SAA") with Stephens Media LLC ("Stephens Media") having been unsealed in another pending action.  In this regard, a substantial portion of MBA's Brief is dedicated to pejoratively characterizing and criticizing the SAA and Righthaven's perceived business model.  (Doc. # 19-1 at 1-10.)  MBA does not have the right to now defend Defendant's liability after entry of default (Doc. # 9). *See Joe Hand Promotions, Inc. v. Pollard,* 2010 WL2902343, at *1 (E.D. Cal. 2010) (a complaint's factual allegations regarding the Defendant's liability must be accepted as true following entry of default).  Moreover, even if MBA could raise such a challenge, which it cannot, it lacks standing as a non-party to the contractual agreements upon which its arguments are based to do so.[1]  Given the amount of dedication put forth by MBA in its attempt to mischaracterize the SAA's effect on the ownership rights conferred upon Righthaven, including the right to seek redress for past infringements, it is forced to respond to these baseless and publicly directed prejudicial assertions.

Under the law of copyright, congress authorized a limited monopoly in copyrighted works "to motivate the creative activity of authors and inventors by the provision of a special reward." *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 429.   Yet, since

---

[1] Righthaven further contends that MBA lacks standing to challenge the contractual validity of the SAA.  Courts have held, that as a matter of public policy, it would be inequitable to allow an infringer to use the validity of transfer of rights to a copyrighted work as a defense when no dispute exists between the parties to the transfer. *See Magnuson v. Video Yesteryear,*

the proliferation of the internet and the number of people with websites and blogs, copyright holders have seen their works repeatedly copied and posted online without permission, recognition, or compensation.  That is the case here, where Defendant displayed an unauthorized reproduction of an article by the *Las Vegas Review-Journal* on their blog.   The abundance of infringement just like the one at issue here is why Stephens Media, owner of the *Las Vegas Review-Journal*, entered into an agreement with Righthaven to help it pursue these infringers.

Part of the strategy to pursuing online infringers requires Stephens Media to assign its copyright in a particular work to Righthaven, along with the right to sue for past, present and future infringement.  It is black letter law that at the moment such an assignment occurs, Righthaven, as the current copyright owner, has standing to pursue a claim for infringement. This is a much different situation than in *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005), where the plaintiff, assigned only a **bare right to sue** for past copyright infringement, lacked standing.

To further clarify the mutual intent of Righthaven and Stephens Media to confer full ownership in copyright to Righthaven when entering into copyright assignments, both parties have provided declarations in support of this memorandum.  Thus, to the extent the Court finds that anything in the SAA or copyright assignment is ambiguous such that it is unclear whether Righthaven has standing, it may interpret these agreements to confer full ownership rights in Righthaven.  The Court's ability to do this is also expressly set forth in the SAA, which vests the Court with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties." (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

Finally, in an effort to cure any possible doubt as to whether Righthaven has full ownership in an assigned copyright, Righthaven and Stephens Media have recently executed a Clarification and Amendment to Strategic License Agreement (the "Amendment"), which not only makes clear that Righthaven has full ownership rights in any assigned copyright, it gives Stephens Media only a non-exclusive right to use an assigned work.

For these reasons, Righthaven MBA's standing-based arguments and other mischaracterizations contained in the Brief are wholly without merit.  Righthaven has at all times

been vested with standing to maintain this suit, or in the alternative, that any defect in Righthaven's standing has been cured by the Amendment.

MBA's remaining arguments additionally lack merit. Righthaven acknowledges the Court is vested with discretion to award statutory damages against the Defendant. This acknowledgement aside, MBA has attempted to set forth some purported parameters for doing so under the guise of consistency with the requirements of due process by asserting that Righthaven's allegedly questionable business model and purportedly unjustifiable ownership rights severely limit its entitlement to anything other than a nominal monetary award. (Doc. # 19-1 at 11-18.) Once the Court determines, as it should, that Righthaven has properly acquired copyright ownership and the associated right to seek redress for past infringements, such as in this case, MBA's unfounded reputational attacks fail upon proper application of decisional law to the facts before the Court. In this regard, Righthaven, as the owner of previously infringed upon rights that have been validly assigned to it along with the right to seek redress for such past infringements, would be denied due process through the issuance of a nominal statutory damage award as requested by MBA. The same holds true for MBA's request to have the Court deprive Righthaven of its request for domain transfer or for the recovery of attorneys' fees and costs. Accordingly, the Court should enter the relief requested by Righthaven or, alternatively, enter such relief as is reasonably necessary to reflect the infringement committed and to deter others trolling the Internet for copyright protectable content that can be readily misappropriated and disseminated throughout cyberspace in clear violation of the Copyright Act.

## II.   STATEMENT OF FACTS

Righthaven filed this action on October 6, 2010. (Doc. # 1.) Service of the Summons and Complaint on Defendant was effectuated on October 11, 2010. (*Id.* # 6.) Defendant failed to appear or otherwise defend the allegations made against him. Accordingly, on January 12, 2011, the Clerk of the Court entered Default against Defendant. (*Id.* # 9.)

Given entry of default, Righthaven's factual allegations concerning the Defendant's liability have been conclusively established. *See Joe Hand Promotions, Inc.,* 2010 WL2902343, at *1. These allegations include the Defendant's infringement of the copyrighted literary work

entitled "FX's manly man shows hold outsider appeal" (the "Work"), which originally appeared in the *Las Vegas Review-Journal* on or about September 5, 2010, through his unauthorized posting on the Internet website <ice.org>, over which he is the registrant, administrative and technical contact. (Doc. # 1 at 1-2; Doc. # 1-1 at 2-3; Gibson Decl. ¶ 3; Hinueber Decl. ¶ 3.) It has also been conclusively established that on October 4, 2010, Stephens Media, the original owner of the Work, assigned all rights, title and interest in and to the Work, including the right to seek redress for all past, present and future infringements (the "Assignment"). (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1; *see also* Doc. #1 at 4.) On October 6, 2010, Righthaven filed for registration of the Work with the United States Copyright Office based on the ownership rights conveyed by the Assignment. (Doc. # 1-1 at Ex. 3; Gibson Decl. ¶ 4.)

On February 8, 2011, Righthaven filed its Motion for Default Judgment. (Doc. # 12.) Righthaven amended this filing two days later, which is the version awaiting adjudication by the Court. (Doc. # 17.) Some two weeks after the filing of Righthaven's Amended Motion for Entry of Default Judgment, MBA filed its Motion and the proposed Brief. (Doc. # 19, 19-1.)

### III.   ARGUMENT

As set forth above, MBA's arguments are largely veiled attacks directed toward Righthaven's standing to maintain and recover in this action based on the Defendant's conclusively established pre-Assignment copyright infringement. The Court should not be swayed by MBA's factually and legally flawed standing arguments.

Standing is a jurisdictional requirement that can be raised at any time, including *sua sponte* by the court. *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008). Pursuant to Section 501(b) of the Copyright Act, only "the legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement. *Silvers*, 402 F.3d at 884. Section 106 of the Act, in turn, defines the exclusive rights that can be held in a copyright (*e.g.* the right to reproduce, to prepare derivative works, and to distribute copies). Exclusive rights in a copyright may be transferred and owned separately—for example, through assignment or an exclusive license—but no exclusive rights exist other than those listed in Section 106. *Silvers*, 402 F.3d at 885. While the right to assert an accrued cause of action for copyright infringement

cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright.  *See id.* at 890.

As the assignee-owner of the full right and title in and to the Work, Righthaven has standing to sue for acts of copyright infringement occurring after it acquired ownership of the copyright.  Pursuant to the express terms of the Assignment, Stephens Media also expressly transferred to Righthaven the right to assert accrued causes of action for infringement of the Work, giving Righthaven standing to sue for Defendant's infringement, even though that infringement occurred prior to the Assignment. (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.)  In addition, Stephens Media and Righthaven recently executed a clarification and amendment to the SAA in order to further clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties—to transfer full ownership in copyright to Righthaven. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.)  This Amendment has cured any defects in standing that existed under the parties' original contractual relationship. (*Id.*)  Therefore, as set forth below, Righthaven respectfully requests that the Court find that Righthaven has standing to maintain this action in view of entry of default and in further view of the record presented in connection with this response.[2]

### A.   Pursuant to the Written Assignment, Righthaven Has Standing to Sue for and Recover Statutory Damages for Past Infringement.

Binding precedent establishes that the Assignment from Stephens Media to Righthaven conveys upon Righthaven standing to bring this case and to recover an award of statutory damages and related relief in view of entry of default.

---

[2] If the Court finds that despite the parties' Amendment to the SAA, Righthaven still lacks standing, Righthaven requests that it be granted leave to join Stephens Media as a plaintiff in order to cure the jurisdictional deficiency.  *See Benchmark Homes, Inc. v. Legacy Home Builders L.L.C.*, 2006 WL 208830, at *1 (D. Neb. Jan. 26, 2006) (granting plaintiff's request for leave to join real party in interest after finding that plaintiff lacked standing to sue under Copyright Act).

In *Silvers*, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. *Id.* at 889-90.  In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased.  *Silvers,* 402 F.3d at 889.

Multiple courts in this district have already determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers*, based on the plain language of the copyright assignment:

- *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011) .
- *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010).
- *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).

(*See also* Gibson Decl. ¶¶ 9-10.)

Just like the assignments at issue in the cases above, the Assignment here transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all accrued causes of action for copyright infringement:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for ***past, present and future infringements*** of the copyright in and to the Work.

(Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1, emphasis added.)  At the moment of the Assignment, Righthaven became the owner of the Work with all rights of ownership, including the right to register the Work, license the Work and seek redress for infringement, including past infringement.  In other words, the Assignment conferred

upon Righthaven the exclusive rights required under the Copyright Act to bring suit for **both** past and future acts of infringement.  As parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the Work.  It also sought registration of the Work with the USCO and brought suit against a blatant infringer, who thereafter failed to answer or otherwise defend.

While MBA argues that the SAA renders the Assignment ineffective, nothing in the SAA's provisions alter the unambiguous language of the Assignment or the rights that Righthaven acquired.  First, the SAA does not effectuate the assignment of any work. (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)  Rather, the SAA reflects promises made by the parties with regard to future transactions in copyrights.  (*Id.*)  The SAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past, present or future infringements, coupled with a license back to Stephens Media of the right to exploit any copyrighted works.  (*Id.*)  But the SAA itself does not cause an assignment of property rights.

Nor does the SAA's right of reversion provision have any impact on Righthaven's present standing to sue for past infringement.  The right of reversion gives Stephens Media the right to regain the ownership to any assigned work in the future under certain conditions. (*Id.* § 8.)  That future right has no impact on Righthaven's current ownership status, its ownership status at the time of the assignment, or its status at the time it filed this action.  Indeed, unless and until Stephens Media exercises its right of reversion, that right will have no impact whatsoever.  Stephens Media has not exercised that right (Gibson Decl. Ex. 2 § 8; Hinueber Decl. Ex. 2 § 8.), and there is nothing in the record to suggest it will.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights."  *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment

transfers all rights, title and interest in and to the assigned property. *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . ."). Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some interest to the same party or to another party, complete title to ownership vests in the assignee ***prior to being divested through licensure***.

While the transactional structure described in the SAA, in which a license is given back to Stephens Media, may potentially be construed to limit Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here. As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement. *Silvers,* 402 F.3d at 889-90.

The transactional structure under the SAA and the actual assignment of rights comport with the holding in *Silvers*. Pursuant to the individual assignments that are ultimately executed, Righthaven is assigned all ownership rights, along with the right to sue for past, present and future infringements, associated with the work assigned. (*See, e.g.,* Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.) While Righthaven promises under the SAA to license rights back to Stephens Media to exploit the acquired works, there can be no license until *after* the assignment of ownership rights and the right to sue for past infringements is conveyed. This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement claims. Any other conclusion would require the Court to ignore the expressly defined assignment and license-back structure contemplated by the parties to the SAA.

**B.     The Court Should Construe the Contracts to Convey to Righthaven All Rights Necessary for It to Have Standing and to Support the Relief Requested.**

Under Nevada law,[3] the Court should interpret the contracts to find that they convey any and all rights necessary to establish Righthaven as the true and lawful owner of the copyright to the Work.  To the extent there is any ambiguity with respect to whether the Assignment sufficiently conveyed the rights to Righthaven so that it has standing to bring this action, the court should look to parties' intent.  *Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481, 488, 117 P.3d 219, 224 (2005) (internal quotation omitted).  Moreover, pursuant to the express language of the SAA, if any portion of the SAA is deemed void or unenforceable, the Court is contractually vested with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties." (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

Contrary to MBA's assertions, there can be no question that the parties intended to convey to Righthaven any right necessary for it to bring suit.  As set forth in the accompanying declarations and as reflected in the SAA, the Assignment, and the recently-executed Amendment discussed below, the parties to the SAA and the Assignment intended to vest copyright ownership of specific works in Righthaven so as to grant it the right to sue for infringement, including past infringement, while still permitting Stephens Media to use the works going forward based on a license of rights to do so from Righthaven. (Gibson Decl. ¶¶ 5-12, Exs. 2-3; Hinueber Decl. ¶¶ 5-11, Exs. 2-3.)  Accordingly, the Court should construe the contracts in such a way that they convey to Righthaven all rights that are necessary to have standing to maintain this action.  If the Court does so, Righthaven has always had standing to bring this suit.  In view of such standing and the entry of default, there is no justifiable basis upon which the Court should deny Righthaven the right to recover statutory damages and related relief under the Copyright Act.

---

[3] The SAA expressly states that it is governed by Nevada law.  (Gibson Decl. ¶ 5, Ex. § 15.3; Hinueber Decl. ¶ 5, Ex. § 15.3.)

### C. Standing Is Also Effected by the Amendment.

As stated above, Righthaven has standing to bring suit pursuant to the Assignment and SAA, which expressly confer (and reflect the intent to confer) full copyright ownership on Righthaven. Nevertheless, to further clarify the parties' intent—and to preempt any future challenges to Righthaven's standing—Righthaven and Stephens Media have clarified and amended their intent when entering into the SAA as set forth in the supporting declarations and in the Amendment. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.)  In the Amendment, Righthaven and Stephens Media promise to execute individual assignments for certain copyrighted works (as before), but Righthaven promises to grant Stephen's media only a non-exclusive license to Exploit the work. (Gibson Decl. Ex. 3 at 1-2; Hinueber Decl. Ex. 3 at 1-2.) As a mere holder of the right to use the assigned copyrighted work, Stephens Media would not have standing to sue for infringement. *See, e.g., Silvers* 402 F.3d at 884-85.  Thus, the sole party holding any exclusive rights, and the attendant standing to sue for infringement, would be Righthaven. *See id.*  This agreement reflects the parties' intent to transfer full rights in the copyright to Righthaven. (Gibson Decl. ¶¶ 5-12, Ex. 3; Hinueber Decl. ¶¶ 5-11, Ex. 3.)  Further, the Amendment extinguishes the "right of reversion" previously held by Stephens Media, and replaces it with a standard option to re-purchase the copyright upon the satisfaction of certain conditions. (Gibson Decl. Ex. 3 at 2-3; Hinueber Decl. Exs. 3 at 2-3.)  The Amendment also contains provisions requiring Stephens Media to pay Righthaven royalties for its use of the Work, making Righthaven the beneficial owner in the Work, in addition to its status as legal owner. (*Id.* at 1-2.)

Courts frequently allow parties to a copyright transfer to subsequently clarify or amend their agreement in order to express their original intent to grant the assignor the right to sue for infringement. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (recognizing that an oral assignment can be confirmed later in writing); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir.

1994); *see also Sabroso Publ'g, Inc.,* 141 F. Supp. 2d at 228; *Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 318 (S.D.N.Y. 1996) (giving effect to a "very late" amendment granting the plaintiff the right to bring the accrued causes of action); *Goldfinger Silver Art Co., Ltd. v. Int'l Silver Co.,* 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (holding that plaintiff could cure standing defect after the action was filed); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993) (holding that second assignment cured standing defect).

Given that the parties to the Assignment and the Amendment do not dispute the rights in the Work and the Defendant, who failed to defend this action, would not be prejudiced in any way by the Amendment, the Court—if it finds that original standing was defective—should allow the Amendment to cure the defect without dismissing the case.[4] *See Intimo, Inc.,* 948 F. Supp. at 317-18; *Infodek, Inc.,* 830 F. Supp. at 620; *Wade Williams Dist., Inc. v. Am. Broad. Co., Inc.,* 2005 WL 774275, at *4 (S.D.N.Y. April 5, 2005); *see also Dubuque Stone Prod. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 724 (8th Cir. 1966); *Kilbourn v. Western Surety Co.,* 187 F.2d 567, 571 (10th Cir. 1951). Moreover, permitting subsequent clarification or amendment of the parties' original intent so as to cure any technical standing defects promotes judicial economy and reduces litigation costs that would necessarily arise from the dismissal and re-filing of a new action. *Intimo, Inc.,* 948 F. Supp. at 318-19. Simply put, MBA's veiled standing challenges to Righthaven's ability to recover that which it is entitled under the Copyright Act should be rejected.

**D.     MBA's Claim That Only Nominal Damages Should be Awarded Would Deny Righthaven Relief to Which it is Clearly Entitled.**

MBA's next veiled assault against Righthaven's purportedly unjust business model, which seeks to protect the statutorily conferred rights vested in copyright protectable works, is through an assertion that only a nominal monetary award and prohibiting the recovery of attorneys' fees would comport with due process in view of Defendant's acts of innocent

---

[4] Federal Rule of Civil Procedure 17(a) additionally supports Righthaven's request to have the parties' intent to grant the company standing to bring this action by recognizing and giving effect to the Amendment through ratification. *See Clarkson Co. Ltd. v. Rockwell Int'l Corp.,* 441 F. Supp. 792, 797 (N.D. Cal. 1977).

infringement. (Doc. # 19-1 at 10-22.) MBA has cited absolutely no controlling case law that holds due process precludes a statutory damage award against a defaulted defendant. In this regard, entry of default conclusively establishes the Defendant committed willful infringement as alleged in the Complaint. (Doc. # 1 at 2.) This required factual conclusion substantively eviscerates MBA's characterization of the Defendant as an innocent infringer. Likewise, MBA has cited absolutely no controlling authority that precludes an award of attorneys' fees and costs to Righthaven as a prevailing party fees under 17 U.S.C. § 505 of the Copyright Act. Once again, MBA's hallow rhetoric is factually supported by its misguided and jaundiced characterization of Righthaven's perceived business model of acquiring copyright ownership through means such as the Assignment, the SAA and the Amendment. As Righthaven has unquestionably established, it has validly acquired the rights upon which it seeks recovery from this Court. Accordingly, Righthaven is entitled such relief despite MBA's obvious agenda driven goal of sanctioning the cyberspace theft of copyright protected works.

   **E. MBA's Domain Name Transfer Argument Concedes Righthaven's Ability to Seek Such Relief to Satisfy a Judgment Entered Against The Defendant.**

MBA additionally attacks Righthaven's ability to seek surrender of the Defendant's Internet domain in this case as a form of relief. In so arguing, however, MBA concedes that "[p]ersonal property, including domain names, can be seized to satisfy an unpaid judgment. (Doc. # 19-1 at n. 15, citing *Kremen v. Cohen,* 337 F.3d 1024, (9th Cir. 2003)). Moreover, while domain name transfer is not expressly authorized under the Copyright Act, a court is permitted to award such relief under its ability to order the destruction or other reasonable disposition of the means used to violate the copyright holders' exclusive rights. *See Central Point Software, Inc. v. Nugent,* 903 F. Supp. 1057, 1061 (E.D. Tex. 1995).

  In *Central Point Software, Inc.,* the defendant was found to have violated the plaintiff's copyrights by posting copies of plaintiffs' software on the defendant's "Electronic Bulletin Board System." As part of the plaintiffs' remedy for infringement, the Eastern District of Texas transferred from the defendant to the plaintiffs "all computer hardware and software used to make and distribute the unlicensed or unauthorized copies of the plaintiffs' copyrighted

13

software.  The covered items include, but are not limited to, modems, disk drives, central processing units, and all other articles by means of which such unauthorized or unlicensed copies were made." *Central Point Software, Inc.,* 903 F. Supp. at 1061. The court cited 17 U.S.C. §503(b) as authority for this decision, and specifically quoted the statute as follows:

> As part of a final judgment or decree, the court may order the "destruction *or other reasonable disposition* of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, *and* of all plates, molds, matrices, masters, tapes, film negatives, *or other articles* by means of which such copies or phonorecords may be reproduced.

*Id.*, 903 F.Supp. at 1061 (citing 17 U.S.C. §503(b) (emphasis added)).

In sum, MBA admits the Court is empowered to authorize the seizure of Defendant's Internet domain as a post-judgment remedy.  Moreover, the decision in *Central Point Software, Inc.* supports such an award as a component of a judgment if the domain was employed to violate a copyright owner's exclusive rights, which has been conclusively established in this case based on the entry of default against the Defendant in view of his Internet-based infringement.  Accordingly, MBA's argument to the contrary is just another example of it acting like the proverbial junkyard dog that is all bark and no bite.

## IV.  CONCLUSION

For the foregoing reasons, Righthaven asks the Court reject MBA's arguments contained in its Brief and award Righthaven the relief to which it is statutorily entitled based on the entry of default against the Defendant.

Dated this 9th day of May, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701

*Attorney for Plaintiff Righthaven LLC*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 9th day of May, 2011, I attempted to file the foregoing document via the Court's CM/ECF system, but was unable to effectively do so until the 10th day of May because of unforeseen Internet-related connectivity issues.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*