1
2
3
4
5

Marc Randazza (Admitted *pro hac vice*)
J. Malcolm DeVoy IV (Nevada Bar No. 11950)
RANDAZZA LEGAL GROUP
mjr@Randazza.com
jmd@Randazza.com
7001 W. Charleston Boulevard, # 1043
Las Vegas, NV 89117
Telephone: 888-667-1113
Facsimile: 305-437-7662

6
7
8
9
10

Ronald D. Coleman  (Admitted *pro hac vice*)
GOETZ FITZPATRICK LLP
rcoleman@goetzfitz.com
1 Penn Plaza – Suite 4401
New York, NY  10119
Telephone: 212-695-8100
Facsimile: 212-629-4013

11

Attorneys for *Amicus Curiae*,
Media Bloggers Association

12

13        **UNITED STATES DISTRICT COURT**

14              **DISTRICT OF NEVADA**

15

RIGHTHAVEN, LLC, a Nevada limited liability company,

Plaintiff,

vs.

BILL HYATT, an individual

Defendant.

Case No. 2:10-cv-01736

***AMICUS CURIAE*'S REPLY TO RIGHTHAVEN LLC'S RESPONSE TO MEDIA BLOGGERS ASSOCIATION'S *AMICUS CURIAE* BRIEF**

16
17
18
19
20

21   ***AMICUS CURIAE*'S REPLY TO RIGHTHAVEN LLC'S RESPONSE TO MEDIA BLOGGERS ASSOCIATION'S *AMICUS CURIAE* BRIEF**

22        *Amicus* Media Bloggers Association (hereinafter, "MBA," or the "*Amicus*"), by and

23   through counsel, replies to Plaintiff Righthaven, LLC's (hereinafter "Righthaven['s]," or the

24   "Plaintiff['s]") Response to MBA's *Amicus Curiae* Brief (Doc. # 35) filed on May 10, 2011 in

25   opposition to MBA's *Amicus Curiae* Brief (Doc. # 29), filed on April 14, 2011.

26   //

27   //

28

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

- 1 -

**I. Introduction**

On May 10, 2011, Righthaven responded to MBA's *Amicus Curiae* Brief (Doc. # 35) and, almost simultaneously, executed a "Clarification" (hereinafter, the ""Clarification"") of the Strategic Alliance Agreement (hereinafter, the "Agreement") between Righthaven and Stephens Media LLC (hereinafter, "Stephens Media"). Decl. of Steve Gibson (Doc. # 36) at 3:13-24, Exh. 3; Decl. of Mark Hinueber (Doc. # 37) at 3:10-21, Exh 3.  This "Clarification," conveniently executed on the day Righthaven had to respond to Defendant's pending Motion (Doc. # 29), supposedly rectifies the defects in Righthaven's Agreement, which governs the terms on which Stephens Media assigns its copyrights to Righthaven.  The "Clarification", however, does no such thing, and serves only as a cynical attempt to obfuscate the unlawful nature of Righthaven's enterprise: The "Clarification," along with the Agreement, is a mere adjustment of Righthaven's acquisition of the right to sue for copyright infringement without a true transfer of bona fide copyright as required by Title 17.  As the assignment of a right to sue in copyright cases has already been deemed unlawful by this Circuit and others, what is happening here is clear: Righthaven's unlawful enterprise has been unmasked, and it is now making a desperate attempt to save its litigation business model.  Unfortunately for Righthaven, but fortunately for free expression and the rule of law, this "Hail Mary pass" will not get Righthaven in the end zone.

The restructuring of the Agreement between Righthaven and Stephens Media supposedly effected by the "Clarification" does little more than rearrange the deck chairs on the Titanic. In both cases, no change of course is effected; asthe rest of the Agreement, which remains in effect, provides, Righthaven exists for other purpose than to sue on copyrights that it "obtains" *only after* finding evidence of supposed infringement.  A true and correct copy of this Agreement is attached hereto as Exhibit A. Exh. A §§ 3-5.  This poorly worded, vague non-exclusive license to content that Stephens Media assigned to Righthaven in the first place (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1) does not eliminate Stephens Media's legally fatal right of reversion (Doc. # 36 Exh. 3 § 2; Doc. # 37 Exh. 3 § 2), and ultimately deprives Righthaven of exclusive rights in the copyright purportedly assigned (Doc. # 36 Exh. 3 §§ 1 and 2; Doc. # 37 Exh. 3 §§ 1 and 2).  But exclusive rights are an essential component of Article III standing in copyright cases. *Sybersound*

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

1   *Records v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Silvers v. Sony Pictures Entm't,*

2   *Inc.*, 402 F.3d 881, 885, 890 (9th Cir. 2005).  Without them, Righthaven is sunk.

3           This "Clarification" illuminates only one thing: the Righthaven copyright litigation

4   factory actually has no lawful interest in or *bona fide* use for the copyrights it purports to acquire

5   from Stephens Media.  Otherwise it would not be necessary for Righthaven to give Stephens

6   Media 30 days' notice to use the works supposedly already infringed copyrights for any purpose

7   other than litigation. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.)  Moreover, a unlike the

8   Agreement, as "clarified," a legitimate assignment of exclusive rights would, axiomatically, not

9   give Stephens Media the unilateral right to buy back the assigned copyright before Righthaven

10  could use the any of the copyright's exclusive rights under 17 U.S.C. § 106. (Doc. # 36 Exh. 3 §

11  2; Doc. # 37 Exh. 3 § 2.)  Righthaven's CEO brings special attention to Section 15.1 of the

12  Agreement, allowing the Court to "correct" the Agreement, or provide "direction" or

13  "clarification." (Doc. # 36 at 3:5-9, 15-21.)  *Amicus* agrees that the Court has an important

14  opportunity for rectification here, but not in the novel and improper role of crafting a legal

15  solution for parties seeking an illegal end.  Rather, and this correction should come from viewing

16  the Agreement and its accompanying "Clarification" for what they are – a cynical attempt to turn

17  copyrights into lawsuits, and nothing more.

18  **II. Legal Standards**

19          Subject matter jurisdiction is an essential element to every lawsuit and must be

20  demonstrated "at the successive stages of the litigation." *Chapman v. Pier 1 Imports (U.S.), Inc.*,

21  631 F.3d 939, 954 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

22  (1992)).  A central component to subject matter jurisdiction is the question of standing, which

23  requires that the party experience actual or imminent harm. *Lujan*, 504 U.S. at 561 (citing

24  *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)).  A party's standing to bring a case is not subject to

25  waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v.*

26  *Hays*, 515 U.S. 737, 742 (1995); *Chapman*, 631 F.3d at 954.  Within the realm of copyright law,

27  subject matter jurisdiction is defined by 17 U.S.C. 501(b), which allows only the legal or

28

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 3 -

beneficial owner of an exclusive right in a copyright, specified in 17 U.S.C. § 106, to sue for infringement. *Silvers*, 402 F.3d at 884.

**III. Argument**

Amicus does not seek to contest the validity of the Agreement or "Clarification" as contracts between Righthaven and Stephens Media, but contests the premise of this lawsuit, i.e., the copyright Righthaven claims to by operation of those written contracts. *See Silvers*, 402 F.3d at 884 (forbidding transfer of the bare right to sue), *compare  Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428-29 (9th Cir. 1996) (precluding defendant from attacking the transfer of the copyrights used to sue for infringement) and *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.,* 141 F. Supp. 2d 224, 227-28 (D. P.R. 2001) (preventing a defendant from attacking the contractual validity of a copyright transferee from the transferor to the transferee plaintiff). Framed in these terms, the Court is presented with an inquiry of what rights Righthaven obtains as a result of the transfer as opposed to a probe into the transaction itself.  *Amicus* respectfully submits that the answer to the question of what rights Righthaven has acquired by these instruments is "none."  This is relevant not only to the question of standing – which is considerable indeed – but also to what damages Righthaven would be entitled to receive from Hyatt in the event of any award, because, as the holder of a spurious right to sue and nothing more, Righthaven cannot claim *any* harm, let alone $150,000 worth.  Surely the Emperor is revealed now to have no clothes.

Amicus nether represents Hyatt nor seeks to have this case dismissed for a lack of subject matter jurisdiction on his behalf.  Righthaven, however, raised – and very extensively briefed – the all-important issue of standing (Doc. # 35 at 2-11) and, as the lynchpin to Righthaven's claimed entitlement to damages, *Amicus* is compelled to address it in that light.  While *Amicus* briefly raised the issue of standing and subject matter jurisdiction in its original Brief (Doc. # 29 at 2-6), the MBA addresses the issue thoroughly in this briefing at Righthaven's initiative, due to the contents of its Response (Doc. # 35) essentially forcing *Amicus* to follow Righthaven down the rabbit hole.  In fact, under the Agreement, even with the "Clarification," Righthaven lacks standing to bring this case.  Accordingly, this Court lacks subject matter jurisdiction over the

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

dispute.

Righthaven deceptively cites three cases in which it was the plaintiff for the proposition that Righthaven's assignments are legal under *Silvers*: *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045- KJD-GWF (D. Nev. March 30, 2011); *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499 at *2 (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372 at *2 (D. Nev. Sept. 2, 2010). Righthaven's reliance on these above-cited District of Nevada cases is doubly flawed. These cases considered only a one-page assignment between Righthaven and Stephens Media, and not the underlying Agreement and "Clarification" that set forth the terms that govern that transaction and which, under the law, make it ineffective.

Indeed, in those three cases, Righthaven appears to have purposely hidden the Agreement from the defendants and the Court. Now that the Agreement and "Clarification" are a matter of record and are before this Court, it has before it the full set of facts determining Righthaven's lack of standing. The fact that Righthaven fought mightily to keep the Agreement from coming to light demonstrates not only that the Righthaven scheme is unlawful, but that Righthaven and its principals were fully aware of that fact, i.e., that they would be undone by consideration of the Agreement. Now they seek to be rewarded for their "creativity," ginning up a "Clarification" that does nothing to cure the underlying lack of rights and lack of standing.

**A. Despite Its "Clarification," Righthaven Still Does Not Have the Right to Sue for Infringement, and Thus Has Not Experienced Any Damage.**

Contrary to Righthaven's ostensible hopes, though, the "Clarification" (Doc. # 36 Exh. 3; Doc. # 37 Exh. 3) serves only to make Righthaven's naked use of its acquired copyrights as the basis of lawsuits – and only as the basis of lawsuits – even clearer.

The "Clarification," even if it could salvage Righthaven's scheme, could not retroactively remedy Righthaven's lack of standing. While a subsequently executed agreement provides clarification regarding the parties' intent to cure standing defects in copyright cases, it does not retroactively confer standing that previously did not exist. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

F.3d 1529, 1532 (11th Cir. 1994); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993).  In each of these cases, cited by Righthaven in its opposition, a clarification was allowed to put a previously executed oral transfer into writing, or to include previously accrued causes of action in the assignment. *See Infodek,* 830 F. Supp. at 620.  None of these cases support the proposition that parties may cure a prior, ineffective attempt to transfer a copyright.  Here especially there can be no "cure" where the only purpose of the transaction is to transfer Stephens Media's copyrights to Righthaven solely for the purpose of litigation in an effort to circumnavigate this Circuit's holding in *Silvers*. 402 F.3d at 890.

### 1. The "Clarification" Denies Righthaven of Substantially All Ability to Use Its Assigned Copyrighted for Anything – Except Lawsuits.

Despite the May 9, 2011 "Clarification," Righthaven's Agreement with Stephens Media provides it with nothing more than the bare right to sue.   An important component of Righthaven's "Clarification" is the revision of Agreement § 7.2 (Exh. A § 7.2) to no longer give Stephens Media an exclusive license to Exploit (defined in *id*. at Schedule 1) the copyrighted works for "any lawful purpose" (*id*. § 7.2).  In its place, as the putative owner of the copyright, Righthaven has granted Stephens Media a non-exclusive license to Exploit the copyrighted work "to the greatest extent permitted by law" on condition that 1) Stephens Media pay Righthaven $1.00 per year for this right, and 2) Righthaven give Stephens Media 30 days notice if it decides to Exploit the copyrighted work or receive any royalties from the copyright's use other than in connection with lawsuits, with failure to do so constituting a material breach of the Agreement. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.)

This aspect of the "Clarification" is problematic for numerous reasons.   First, Righthaven's non-exclusive license to Stephens Media contains no definitions as to duration, geography or media covered.   Rather, it haphazardly lets Stephens Media use the copyright assigned to Righthaven "to the greatest extent permitted by law." (*Id*.)  This vague language impairs the markets and interests of other licensees to which Righthaven could license its copyrighted works, such as those that better serve markets in which Stephens Market is permitted to compete, and especially in light of Righthaven's infringement litigation arrangement with Stephens Media evinced in Exhibit A §§ 3-5, and unchanged by the "Clarification."

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

Moreover, under the "Clarification," Righthaven's unilateral use of the assigned copyright would constitute a material breach of the Agreement, allowing Stephens Media to seek injunctive relief against Righthaven – for using what is ostensibly its own copyright. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.)  Such an extreme limitation by the assignor of a copyright is inimical to ownership of a copyright.  Righthaven, however, is so desperate to retain the right to extort money from alleged infringers of "its" copyrights such as Hyatt that it dishonestly insists it is the owner of the assigned Stephens Media copyrights. (Doc. # 36 Exh. 3 § 3; Doc. # 37 Exh. 3 § 3.)  This dishonesty must not be rewarded.

Stephens Media's $1.00-per-year license and royalty fee (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1) is also misleading.  While a nominal fee for licensing back the copyright Stephens Media originally assigned to Righthaven, this sum is vastly outweighed by the revenues Stephens Media receives from Righthaven's litigation on the assigned copyright, as the Agreement – unaltered by the "Clarification" in this respect – entitles Stephens Media to 50% of any recovery Righthaven obtains from litigation. (Exh. A § 5).  With all of the components taken together, Stephens Media assigns its copyright to Righthaven and pays $1.00 in order to receive 50% of Righthaven's litigation recovery.[1]  Based on what little public information is available about Righthaven's settlements, Stephens Media's recovery entitlement per copyright assignment has been orders of magnitude greater than $1.[2]  Indeed, without the recovery clause in § 5 of the Agreement (Exh. A. § 5), this entire arrangement would fail to be profitable for Stephens and Righthaven and make no sense for either party, as Stephens assigns only copyrights that have been – or it believes have been – infringed. (*See* Exh. A. § 3.)  It makes no sense for Stephens Media to assign only its infringed copyrights to Righthaven, just to license them back and give Righthaven the sole "right" to sue for infringement,[3] unless Righthaven's only purpose is to sue on these assigned copyrights.

---

[1] This presumably includes sharing any attorneys' fees award with Stephens Media, potentially violating Fed. R. Civ. P. 54(d)(2).

[2] *See* Righthaven Lawsuits, http://righthavenlawsuits.com/ (*last accessed* May 10, 2011) (providing Righthaven's estimated revenues based on lawsuit settlements).

[3] The right to sue for copyright infringement is not one of the exclusive copyright rights provided under 17 U.S.C. § 106.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

Righthaven and Stephens Media also used the "Clarification" to amend the reversion provisions of its Agreement.  Instead of allowing Stephens Media to have a complete reversion of the copyright (Exh. A § 8), the "Clarification" allows Stephens Media to, at any time, give Righthaven 14 days notice that it will repurchase the previously assigned copyright for $10. (Doc. # 36 Exh. 3 § 2; Doc. # 37 Exh. 3 § 2.)  What's more, upon exercising this option, Stephens Media must repay Righthaven the costs Righthaven had undertaken to pursue infringement actions on that assigned copyright. (*Id*.)  This new, revised section 8.2 goes into considerable detail governing how Righthaven will be compensated and disputes settled in the event of Stephens Media exercising its unilateral right to repurchase its assigned copyright from Righthaven, even at the cost of terminating Righthaven's pending litigation (*id*.) – a profound issue that belies Righthaven's claim as the true, legal and beneficial owner of the assigned copyrights.

Operating together, sections 1 and 2 of the "Clarification" make it clear that Stephens Media retains full ownership of the copyrights that Righthaven claims to own. (Doc. # 36 Exh. 3 §§ 1 and 2; Doc. # 37 Exh. 3 §§ 1 and 2.)  If Righthaven wants to exploit or otherwise license the assigned copyright, it must give Stephens Media 30 days' notice before doing so. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.)  Yet, once given notice of Righthaven's intent to use the copyright it supposedly owns, Stephens Media may exercise its rights under new § 8.1 to repurchase the copyright with 14 days' notice and the payment of $10.  As set out above, this arrangement creates a potential loop whereby, if Righthaven were to even try to use Stephens Media's assigned copyrights for a purpose other than litigation, Stephens Media could snatch them back before Righthaven could actually use them.  Any characterization of this arrangement as "ownership" of the copyrights is bizarre.

Substantively, this is not a non-exclusive license, but an exclusive license to Stephens Media.  This mislabeled exclusive license permits Stephens Media supposedly to use the assigned copyright "to the greatest extent permitted by law" (*id*.) up to and until the time Righthaven uses or licenses the copyright for a purpose other than infringement litigation. (*Id*.) Should Righthaven provide Stephens Media notice that it intends to use the copyright for non-

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

litigation purposes, though, Stephens Media can buy back its rights before anyone else can use the copyrights supposedly owned by Righthaven. (Doc. # 36 Exh. 3 §§ 1 and 2; Doc. # 37 Exh. 3 §§ 1 and 2.)   This arrangement defeats the rights Righthaven claims here as its basis for recovery.  *See*, *Sybersound*, 517 F.3d at 1150-51 (holding that only exclusive licensees may use or enforce the rights they possess); *Davis*, 505 F.3d at 101 (observing that "no one other than the exclusive licensee may exercise the right" where there is an exclusive license).

### 2. Taken Together, the Terms of Righthaven's Agreement and "Clarification" Show that Righthaven is not the Owner of the Assigned Copyrights, but has Merely Been Assigned a Right to Sue.

Righthaven's and Stephens Media's "Clarification" describes Righthaven as the copyright "owner,"  but it is a word without meaning in this circumstance. (Doc. # 36 Exh. 3 § 3; Doc. # 37 Exh. 3 § 3.)  A child lacking understanding may call a dog a "cat," but that does not make it so.  Righthaven and Stephens Media are not children, but have called Righthaven the owner of Stephens Media's assigned copyrights in § 3 of the "Clarification" (*id*.) although it obviously is not so either, in light of the excessive restrictions on Righthaven's use of the assigned copyrights contained within the Agreement (Exh. A) and amplified in the "Clarification" (Doc. # 36 Exh. 3; Doc. # 37 Exh. 3).

It is not uncommon for courts to encounter, and reject, restrictive agreements that purport to transfer ownership of a copyright but, in reality, convey no such right. In *Lahiri v. Universal Music & Video Distribution Corporation*, 606 F.3d 1216, 1222 (9th Cir. 2010) the appeals court found that a settlement agreement purportedly recognizing a party in the litigation as an "owner" of a copyright was too restrictive to convey such a right, holding that "[t]he record demonstrates [the attorney] misled the district court by use of a settlement agreement that deceptively used ownership language, but did not convey or recognize [the assignee's ownership]."   This language should be of great instructive value for this Court, as the record in this case demonstrates the same thing.

Similarly, in *Nafal v. Carter*, the court held that the plaintiff's description in the putative assignment as a "co-owner" was not properly dispositive of the plaintiff's ownership rights. 540 F. Supp. 2d 1128, 1141 (C.D. Cal. 2007).  Instead, the court held that the relevant test to

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

determine proper ownership of a copyright was "Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. at 1141-42, citing *Althin v. W. Suburban Kidney Ctr.*, 874 F. Supp. 837, 843 (N.D. Ill. 1994).

In *Nafal*, the document allegedly giving the plaintiff an ownership interest in the copyright prohibited him, much as the Agreement and Clarification do for Righthaven, from "exercising any decision-making authority over almost every portion of the License Agreement." 540 F. Supp. 2d at 1142. Accordingly, the court found that Nafal was not the owner of the work, lacked Article III standing to pursue a copyright infringement claim, and disposed of the case at summary judgment. *Id*. at 1144. Similarly, in *Althin*, the trial court found that the plaintiff company lacked standing to bring its copyright infringement claims. 874 F. Supp. at 837. Upon review, the court found that the assignment agreement that putatively made the company an exclusive copyright right holder merely conveyed a non-exclusive license to the plaintiff company. *Id*. Specifically, the court found that the rights transferred by the parties' agreement under the 1976 Copyright Act were "governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. As the licensor gave the licensee no right to transfer or assign the license agreement, with only a very narrow exception, the court held that Althin did not acquire sufficient rights to have standing to enforce them against others' infringement, and thus dismissed the case on the defendant's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss. *Id*.

As set forth above, Righthaven has extraordinarily limited rights for a copyright "owner." Righthaven's fundamental rights to dispose of its copyrights are so limited and crippled that cannot even use them for non-litigation purposes without seeking Stephens Media's approval, lest it "materially breach" its Agreement. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.) Whenever Stephens Media wishes, with minimal notice, it may, without opposition, repurchase its assigned copyrights for $10 apiece. (Doc. # 36 Exh. 3 § 2; Doc. # 37 Exh. 3 § 2.) At the end of the day, under the Agreement, the only thing Righthaven has any authority to do is to pursue infringement litigation. (Exh. A §§ 3-5.)

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 10 -

A number of other provisions in the Agreement that are not affected by the "Clarification" further deny Righthaven ownership of the copyright, and reserve rights to Stephens Media far beyond those due to a non-exclusive licensee.   As part of its copyright assignments to Righthaven, Stephens Media is entitled to:

> maintain Encumbrances on Stephens Media Assigned Copyrights as part of an overall funding securitization whereby all or substantially all of Stephens Media's assets are Encumbered as part of said funding securitization and Stephens Media Assigned Copyrights are not singled-out as or part of a particularized group of Encumbered assets.

(Exh. A § 9.3.)  This provision entitles Stephens Media, putatively the non-exclusive licensee of the assigned copyrights under the "Clarification", to mortgage the copyrights ostensibly owned by Righthaven.    Thus, despite Righthaven being the apparent owner of these copyrights, Stephens Media is entitled to use them as security for funding and other financial obligations. This is inconsistent with the tale that Rightaven now weaves before this Court.

Stephens Media retains a number of other rights in the copyrights Righthaven claims to own.  In Agreement § 3.3 (*id*. § 3.3), Stephens Media retains the right to reassign the copyright, despite Righthaven's ownership, if Righthaven declines to sue for its infringement.   If Righthaven were the sole and true owner of the assigned copyright, Stephens Media would have no such rights, yet this section of the Agreement gives Stephens Media the right to reassign a copyright that it insists is owned by Righthaven. (*Id*.)  Righthaven further reveals the flimsiness of its "ownership" claim in Agreement § 3.4, pursuant tp which it does not even have the exclusive right to conduct litigation, and which grants Stephens Media – a mere non-exclusive licensee under the "Clarification," which normally would not have standing to sue for infringement – the right to pursue infringement litigation on its own, without Righthaven. (*Id*. § 3.4.)

In sum, all of Righthaven's rights to the works assigned to it by Stephens Media are beholden to Stephens Media's unfettered whims: From Righthaven's ability to exploit or license the work to a party other than Stephens Media and Stephens Media's right to re-purchase any assigned copyright for $10 without Righthaven having any ability to oppose, to Righthaven's

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

sole pre-authorized use of the assigned copyright being for copyright infringement under Agreement §§ 3.1-3.4 and Stephens Media's ability to pursue its own copyright infringement lawsuits.  Stephens Media's rights and privileges permeate the Agreement and "Clarification" so completely and thoroughly that Righthaven's "ownership" of the assigned copyright is little more than a cruel joke at the expense of Hyatt and hundreds of other defendants who have been sued under this unlawful arrangement, to say nothing for those who have given in to Righthaven's extortionate demands in cases resolve before Righthaven was forced to admit the true nature of its "rights."

To the extent this Court must examine this Agreement, and correct it as Righthaven has encouraged the Court to do in § 15.1 of its Agreement (*id*. § 15.1) in order to effect the parties' "manifest intent" (Doc. # 36 at 3:8-12, 18-24; Doc. # 37 at 3:10-14, 15-21), it should find that it is nothing more than a vehicle to unlawfully transfer the right to sue, and no other rights, under the guise of copyright ownership.  Indeed, the Agreement and its "Clarification" haphazardly consider Righthaven's ability to use and protect its copyright rights in all arenas except its meticulously detailed scheme to pursue infringement litigation on the assigned copyrights in Agreement §§ 3-5. (Exh. A. §§ 3-5.)  The very inclusion of § 15.1 (*id*. § 15.1) in the Agreement, and its retention in the "Clarification," demonstrates that Righthaven and Stephens Media knew their arrangement was a sham, yet they couldn't find a way to make the Righthaven model work – predominantly because such operations are prohibited by *Silvers* and other law in this Circuit – and want the Court to change the parties' agreement to effectuate its unlawful scheme.  Not only is the Agreement and "Clarification" between Stephens Media and Righthaven unlawful, so too is the parties' intent – to transfer the right to sue to Righthaven, with no other rights – and the Court cannot cure what ails Righthaven and its business model.

The operation of this Agreement and its "Clarification" is nothing more than the transfer of an accrued right to sue without any exclusive rights.  This practice has been held unlawful in every jurisdiction to consider it, including the controlling Court of Appeals for the Ninth Circuit. *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007); *Silvers*, 402

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 12 -

F.3d at 885; *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982); *see also Sybersound*, 517 F.3d at 1144.  No matter what Righthaven calls the rights it supposedly obtains, substantive analysis reveals them to be little more than the bare right to sue – something that not only is not provided for in 17 U.S.C. § 106, but has been specifically held to be unlawful in case after case, and runs directly contrary to the Copyright Act's entire purpose.

**B. This Court's Award of Nominal Damages is the Most that Righthaven can Justifiably Receive, and Still More than Righthaven is Entitled to Under its Agreement and "Clarification" with Stephens Media.**

As illustrated in the foregoing sections, Righthaven has acquired nothing more than the bare right to sue for infringement – which, under the exclusive list of copyright rights enumerated in 17 U.S.C. § 106 – is not a "right" at all. *Silvers*, 402 F.3d at 884.  To the extent Righthaven even has standing to bring this suit and recover damages, its entitlement to damages is minimal – arising only from the statutory minimum damages allowed in 17 U.S.C. § 504(c). The actual damages suffered by Righthaven are so remote and infinitesimally small that even an award of statutorily minimum damages - $750 – will wildly exceed the value that Stephens Media and Righthaven seem to have assigned to the work – a single dollar. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.)

The extraordinarily limited scope of Righthaven's ownership rights in the copyrights it receives from Stephens Media, to the extent Righthaven receives any such rights, reveals that the copyrights are ostensibly transferred for one purpose only: litigation.  Even if they were not, the $1 per year licensing fee seems to demonstrate that even $750 in damages might be excessive – and $150,000 most certainly is off the charts with respect to its level of impropriety. Righthaven cannot reliably or even realistically license or otherwise use the assigned copyrights for a purpose other than Stephens Media's purported non-exclusive license – making its copyrights worth, at most, $1.00 per year.  Indeed, while Righthaven's "Clarification" fails in many regards, it makes crystal clear the fact that Righthaven – to the extent it can bring these lawsuits – incurs laughably small damages due to the infringement of Hyatt and others.  In turn, these puny

- 13 -

pecuniary losses make Righthaven appear all the more ridiculous in pursuing a large default judgment award.

As discussed above, Righthaven breaches its Agreement with Stephens Media if it tries to license or otherwise use the content Righthaven supposedly owns without 30 full days' notice, a time period within which Stephens Media can buy back the copyrights it purportedly assigned to Righthaven.  Within this timeframe, Stephens Media receives the value of its content in the only way Righthaven is authorized to deliver it under the Agreement (Exh. A), which is by filing infringement lawsuits.  One cannot suspend disbelief long or hard enough to think that Stephens Media gave its sole and most important asset – its content – to Righthaven for the stated sum of $1.00 per year as laid out in the "Clarification". (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.) Instead, Stephens gets 50% of any litigation recovery Righthaven obtains (Exh. A) as a reward for purporting to give its copyrights to Righthaven.  Meanwhile, Stephens Media obtains no other benefit from allowing Righthaven to "own" its copyrights.

The true operation of this Agreement, even with a "Clarification" makes it clear that Righthaven is not seriously participating in the market for content or licensing.  In fact, with the shackles placed on it by Stephens Media's many restrictions on how the copyrights can be used, Righthaven is not participating any markets *at all* save the one foreclosed to it by *Silvers*.  As argued in *Amicus*' opening brief (Doc. # 29), Righthaven exists solely for the purpose of litigating these copyrights, and cannot claim that Hyatt's use of the article at issue harmed its market.  Righthaven produced no evidence that it is engaged in licensing or content production in any way, or that the infringing use of the article by Hyatt will damage Righthaven's market for the overwhelmingly exclusive and one-sided right to obtain Stephens Media's copyrights and use them to file lawsuits for infringements discovered before obtaining the copyrights.

In short, Righthaven is not a newspaper, newsletter, magazine, blog or any other entity that could be harmed by Hyatt's actions.  The only thing that could possibly hurt Righthaven's illusory interests in the Stephens Media copyrights is if Hyatt somehow claimed ownership of those copyrights and set up a competing unlawful litigation mill to terrorize bloggers and webmasters across the country.  As Hyatt has neither done so, nor has he used the copyright in

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

any way that would harm Righthaven's ability to illegally use these copyrights as a premise for litigation, Righthaven cannot credibly claim to have suffered one whit of damage in this case.

This complete and utter lack of damages, and Righthaven's total absence of any demonstration of the harm caused by Hyatt, point to the inescapable conclusion that Righthaven is not owed anything. (And that, of course, assumes that Righthaven is even entitled to *be* here and bring this lawsuit.)  Righthaven had its opportunity to show damages, and was practically instructed to do so by *Amicus*' opening brief (Doc. # 29).  Rightaven's complete failure to do so, instead focusing myopically on the question of Article III standing and subject matter jurisdiction for the preponderance of its Response to the *Amicus Curiae* Brief (Doc. # 35) is just another point of datum showing that Righthaven's damages are nothing.  Recovery from Hyatt should be as close to that amount – zero – as possible.

### C. Substituting or Adding Stephens Media as Plaintiff in This Case is Improper, and Will Neither Remedy Righthaven's Lack of Standing, Nor Will It Remedy Righthaven's Lack of Damages.

As a simple technical matter, under Local Rule 7.2, Rightaven's request to add or substitute Stephens Media as Plaintiff in this action is improper, as it should be brought before this Court as a separate motion.  Such a request for substitution is improperly brought with Righthaven's brief. (Doc. # 35 at 11).  Nevertheless, considering Righthaven's request at this time is in the interest of judicial economy.

While *Amicus* is agnostic as to the issue of Hyatt's liability, as he is in default, the circumstances of this case do not permit Righthaven to add or substitute Stephens Media as a plaintiff due to it being the proper party in interest.  When a plaintiff has not suffered an injury and lacked standing since a lawsuit's inception, a proper party in interest cannot substitute for the plaintiff later in litigation. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2007); *Blackwell v. Skywest Airlines*, 245 F.R.D. 453, 463 (S.D. Cal. 2007).  As Righthaven never owned, nor was it ever the exclusive assignee, of a copyright right defined in 17 U.S.C. § 106, it never had a claim against Hyatt, nor was there any confusion as to who the proper party-in-interest was.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 15 -

If there were some actual bona-fide confusion as to the copyright's ownership, there might be grounds under which Stephens Media could be substituted in as the plaintiff.  *See Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir. 2001); *Isbell v. DM Records, Inc.*, Case No. 4:07-cv-146, *2009 U.S. Dist. LEXIS 23735* at *2-3 (E.D. Tex. 2009).  However, the right to substitute a party is not a right granted to plaintiffs who get caught breaking the law, and who then want to save face.  This right is there for parties who have an honest misunderstanding of the legal owner of certain rights.  There is nothing honest about Righthaven, and it does not deserve such grace from this Honorable Court.  Righthaven's "Clarification" to its Agreement with Stephens Media does not confer standing upon Righthaven, as the Agreement still operates just as it ever has – to grant Righthaven the bare right to sue for infringement, and nothing more. From the Agreement's construction and "Clarification's" added terms, there is no question that Righthaven still lacks these rights.

This Agreement and its desperately manufactured "Clarification" exist solely to serve whatever purpose is furthered by Stephens Media not being the plaintiff in the more than 250 lawsuits filed by Righthaven.  Ironically, if Stephens Media had acted as the plaintiff in these cases, it would obviate the need for its attempts to appear as if it had transferred some kind of copyright rights to Righthaven in an effort to masquerade its assignment of the bare right to sue. For whatever reason, Stephens Media chose to ignore *Silvers*, set up a copyright litigation entity, and attempted to dance around this Circuit's precedent forbidding exactly Righthaven's and Stephens Media's relationship *ex post*.

Of course, this does not change the fact that Stephens Media is paying a mere dollar for the right to use the article in question in this case. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.) Accordingly, if Stephens Media were to be substituted in as the Plaintiff, it could not claim that its damages were greater than the one dollar that it ostensibly is paying to Righthaven in order to use its own works.  Therefore, whether the Plaintiff is Righthaven or Stephens Media, the damages are the same – one measly dollar.  If Righthaven is entitled to anything, which it is not, then it is the bare statutory minimum available to it under the Copyright Act.

//

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

- 16 -

**D. Despite Its Arguments to the Contrary, Righthaven is Still Not Entitled to the Domain Names of Hyatt and Other Defendants.**

This District has directly and soundly rejected Righthaven's argument that it is entitled to the transfer of a defendant's domain name. *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01343, *2011 WL 1458778* at *1 (D.Nev. Apr. 15, 2011). In *DiBiase*, the court held that the remedies for copyright infringement "are only those prescribed by Congress." Id. at *2-3, citing *Sony Corp of Am. V. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1984) (quoting *Thompson v. Hubbard*, 131 U.S. 123, 151 (1889)). To date, Congress has never expressly granted copyright infringement plaintiffs the right to seize control over the defendant's website domain.

While such a domain may be sold in fulfillment of any judgment Righthaven receives, that is ultimately Hyatt's choice, as it is his intangible personal property. The Eastern District of Texas precedent upon which Righthaven relies, *Central Point Software, Inc. v. Nugent,* does not even support the Plaintiff's proposition. 903 F. Supp. 1057, 1061 (E.D. Tex. 1995). In Central Point, the court observed that it could order the destruction or other reasonable disposition of various physical media used to copy the plaintiff's phonorecords. *Id*. While the court did indicate that it can control the disposition of "other articles," (*id*.) the context of this language, accompanying a list of physical items, suggests it is inapplicable to intangible personal property.

Moreover, while the court does have wide discretion to order "other reasonable disposition" of personal property (*id*.), courts are not entitled to disregard the U.S. Supreme Court's precedent. As discussed in *DiBiase*, the orders of the land's highest court prohibit ordering the turnover of domain names as relief for copyright infringement. As such, for a court to repudiate this precedent, without any authorization or even *guidance* from Congress to do so, would be per se unreasonable. As such, Righthaven's demand for Hyatt's domain to be turned over to Righthaven as part of the Court's entry of judgment must fail.

### Conclusion

Despite Righthaven's last-minute "Clarification" of its Agreement with Stephens Media, the relationship between those parties fails to confer Righthaven with standing, let alone any meaningful entitlement to damages and in fact simply clarifies the lack of damages altogether.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

As such, Righthaven lacks, and has never possessed, standing to bring this action, and this Court therefore lacks subject matter jurisdiction over the dispute.

To the extent this dispute is properly before the Court, Righthaven has not proven that it has been harmed by Hyatt's use of the article at issue.  Righthaven, in fact, has not shown any evidence of harm, but simply arguments that the statutory damages available under 17 U.S.C. § 504(c) entitle it to an absurd level of damages when compared to the actual damage that could have theoretically been done by Hyatt – a single dollar. (Doc. # 36 Exh. 3 § 1; Doc. # 37 Exh. 3 § 1.).  To the extent Hyatt's posting of the article did any harm, it was not in Righthaven's illicit "market" of pre-infringed copyrights ripe for litigation.

Righthaven's proposed last-second joinder of Stephens Media will not cure Righthaven's many problems in this litigation – the least of which being that it has once again ignored this District's, the U.S. Supreme Court's and Congress' prohibition on domain name transfers as a remedy for copyright infringement.  When Righthaven's arguments actually touch the issue of its Constitutionally permissible damages (versus Righthaven's standing to bring these cases), those arguments are dead upon arrival.  While *Amicus*' position is that Righthaven is not entitled to *any* damages, this Court should not award Righthaven more than the minimum compelled by statute – if that.

Dated: May 16, 2011

Respectfully Submitted,

RANDAZZA LEGAL GROUP

Marc J. Randazza
J. Malcolm DeVoy IV

Ronald D. Coleman
GOETZ FITZPATRICK LLP

Attorneys for *Amicus Curiae*,
*Media Bloggers Association*

- 18 -

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 16th day of May, 2011, I caused documents entitled:

**AMICUS CURIAE'S REPLY TO RIGHTHAVEN LLC'S RESPONSE TO MEDIA BLOGGERS ASSOCIATION'S AMICUS CURIAE BRIEF**

to be served as follows:

[    ]    by depositing same for mailing in the United States Mail, in a sealed envelope addressed to Steven A. Gibson, Esq., Righthaven, LLC, 9960 West Cheyenne Avenue, Suite 210, Las Vegas, Nevada, 89129-7701, upon which first class postage was fully prepaid; and/or

[    ]    Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

[    ]    to be hand-delivered;

[ X ]    by the Court's CM/ECF system.

/s/ J. Malcolm DeVoy_____

J. Malcolm DeVoy

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113